[No. E008057. Fourth Dist., Div. Two. Dec. 17, 1991.]

Estate of DEAN GARDNER, Deceased.
DEANNE ACUNA et al., Contestants and Appellants, v.
NANCY C. GARDNER, Claimant and Respondent.

[Opinion certified for partial publication.*]

*Part II is not published; it does not meet the standards for publication contained in rules 976(b) and 976.1 of the California Rules of Court.

COUNSEL

Willard D. Horwich for Contestants and Appellants.

Hirschi, Clark & Hawkins, Clair Murphy and Walter Clark for Claimant and Respondent.

OPINION

**DABNEY, Acting P. J.**—This case involves the contest of probate of the will of Dean R. Gardner. Contestants, Deanne Acuna and Ross Gardner, children of Dean, challenged the will on the basis Dean was without testamentary capacity; the will was a result of undue influence of Nancy Gardner, Dean's wife; and the will was not executed in accordance with statutory requirements. Ross and Deanne also filed a petition to determine ownership of estate property and for an order directing Nancy to transfer

property to the estate of Dean. Although there was a request for a jury trial,[1] the court determined pursuant to Probate Code section 8252[2] that the parties were not entitled to a jury trial. After a court trial on the issues, the court determined that Dean had testamentary capacity, he was not subject to the undue influence of Nancy in the execution of his will, and the will was executed in accordance with statutory requirements. Judgment was entered in favor of Nancy. On appeal, Deanne and Ross contend that the court erred in refusing their request for a jury trial and there was insufficient evidence to support the court's determinations.

FACTS

Dean died on June 17, 1988. His will, executed on October 31, 1982, provided that Nancy was to receive his entire estate. It specifically stated that Dean had intentionally omitted to provide for his children from a previous marriage, Deanne and Ross, in the will.

Dean was an alcoholic and drank heavily for the majority of his life. Deanne and Ross were the children of Dean's first marriage which ended in divorce. In 1952, Dean married his second wife, Jeanette,[3] with whom he lived until her death in February 1981.

After Jeanette's death, Dean asked a neighbor and the housekeeper to marry him. His drinking increased and he referred to the women in his life by the wrong names. Dean lived with Deanne from February 1981 to the end of April 1981. During this period, Dean was depressed, confused and often hallucinated.

Dean began dating Elaine Cawley in April or May 1981 until January 1982. Dean drank heavily during this period. He called Cawley by names other than her own and was easily influenced.

In March 1982, Dean married Nancy Gardner. Although Dean drank when they first married, Nancy did not consider this to be a problem. However, in October 1984, she and two friends convinced Dean to join Alcoholics Anonymous (AA). Dean stopped drinking in early 1985.

In October 1982, Dean and Nancy asked Lawrence and Constance Seger to witness them sign their wills. In the presence of both the Segers, Dean

---

[1]The actual request for a jury trial does not appear in the record on appeal; however, the record reveals that a request was made and refused, and neither party contests this fact on appeal.

[2]All further references to code sections will be to the Probate Code unless otherwise indicated.

[3]The reporter's transcript sometimes refers to Jeanette as Janet.

thanked them for witnessing the signing of the wills, using the word, "wills." Larry testified he remembered that Nancy asked him over the phone if he and Connie would witness the signing of the wills. Also, it is likely that he would have mentioned this to his wife. However, Connie testified she was not sure she knew the documents were wills and did not remember if she was told by her husband that they were wills or if she examined the documents. Connie had signed a statement in August 1988 which stated, "In 1982 Nancy and Dean asked us to witness their signature. They came to our home in Cypress with the papers. I didn't know what the papers were about."

In December 1982, after Nancy had been hospitalized for 21 days in November, Dean had a period of depression in which he talked to and served drinks to people who were not there. Dean was fine by January 1983.

Although several doctors' reports made just preceding Dean's death stated that Nancy had reported that Dean had hallucinated over the last five years, Nancy denied making this statement. Instead, she testified that the December 1982 episode was the only one.

Numerous witnesses testified about Dean's sobriety and ability to conduct personal business during the years Dean and Nancy were married. Dean's physician, Dr. Charles Rasmussen, testified he examined Dean in 1982 and early 1983. Although Dean was an alcoholic, Rasmussen saw no signs of dementia.

Dr. Morton Kurland, a psychiatrist specializing in alcoholism, testified he examined Dean on March 29, 1988. He diagnosed Dean as suffering from Korsakoff's syndrome, which is brought on by repetitive long-term excessive use of alcohol. A person with this syndrome would experience hallucinations and would be susceptible to suggestion. Kurland opined that it was likely that Dean suffered from the syndrome at least in 1983 and "very likely" in 1982. He testified that it was "quite possible" Dean would not have known the nature and extent of his property or the objects of his bounty when he executed his will in 1982. However, a person suffering mental degenerative processes would have periods of clarity.

Dr. Ihor Galarnyk reviewed Dean's medical records and some of the testimony in the case. He opined that Dean's symptoms of delirium were episodic and not a permanent progressive problem.

J. Harold Berg was the attorney who drafted Dean's will for him. Berg testified there were no indications that Dean did not understand what he was doing. Dean indicated he had an understanding of his relationships to his

wife and children. Dean told Berg he felt he had done enough for Ross and was upset with Deanne. Berg opined that Dean was of sound mind at the time he discussed his will.

The Segers and Nancy all testified that Dean was coherent and seemed in control of all his faculties at the time he signed his will.

## DISCUSSION

## I

## *Jury Trial*

Deanne and Ross contend the court erred in holding they were not entitled to a jury trial. The first amended contest of the probate of the will was filed September 6, 1988. The motion for determination of ownership of estate property was filed April 28, 1989. Although it is not part of the record, contestants contend their request for jury trial was filed August 23, 1989. The trial on the issues was held March 27 through April 3, 1990. Judgment was entered April 25, 1990.

We note initially that the right to a jury trial in probate proceedings is a statutory and not a constitutional right. Thus, unless a statute specifically provides for a jury trial, contestants have no such right. (*Estate of Beach* (1975) 15 Cal.3d 623, 642 [125 Cal.Rptr. 570, 542 P.2d 994].)

Section 8252, subdivision (b), effective July 1, 1989, provides, "The court shall try and determine any contested issue of fact that affects the validity of the will." This section replaces section 371 which provided for jury trial in will contests when requested. The Law Revision Commission Comment to section 8252 explains, "Section 8252 eliminated the jury trial in will contests. A jury trial is not constitutionally required. Under former law, there was a high percentage of reversals on appeal of jury verdicts, with the net result that the whole jury and appeal process served mainly to postpone enjoyment of the estate, enabling contestants as a practical matter to force compromise settlements to which they would not otherwise be entitled." (Cal. Law Revision Com. com., 53A West's Ann. Prob. Code, § 8252 (1991 ed.) p. 173 [Deering's Ann. Prob. Code, § 8252 (1991 ed.) p. 367].)

Deanne and Ross argue that because their original contest to the will was filed before the effective date of section 8252, it does not apply to their case. They additionally argue that section 8252 is not retroactive in its application.

Section 3 deals with the operative date of the Probate Code changes which included section 8252. "Subject to the limitations provided in this section, a new law applies on the operative date to all matters governed by the new law, regardless of whether an event occurred or circumstance existed before, on, or after the operative date, including, but not limited to, creation of a fiduciary relationship, death of a person, *commencement of a proceeding*, making of an order, or taking of an action." (§ 3, subd. (c), italics added.)

"If a petition, account, report, inventory, appraisal, or other document or paper is filed before the operative date, the contents, execution, and notice thereof are governed by the old law and not by the new law; but any subsequent proceedings taken after the operative date concerning the petition, account, report, inventory, appraisal, or other document or paper, including an objection or response, *a hearing*, an order, or other matter relating thereto is governed by the new law and not by the old law." (§ 3, subd. (d), italics added.)

Section 3 provides that the new law applies to all matters, including pending matters. The trial of the issues presented in this case does not fit into any of the exceptions listed in section 3. (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (1991 ed.) § 3, p. 9 [Deering's Ann. Prob. Code § 3 (1991 ed.) p. 9].) Therefore the new law, which provides for a court trial only, applies to the trial in this case.

However, under section 3, subdivision (h), "If a party shows, and the court determines, that application of a particular provision of the new law or of the old law in the manner required by this section or by the new law would substantially interfere with the effective conduct of the proceedings or the rights of the parties or other interested persons in connection with an event that occurred or circumstance that existed before the operative date, the court may, notwithstanding this section or the new law, apply either the new law or the old law to the extent reasonably necessary to mitigate the substantial interference."

The Law Revision Commission Comment further explains, "Because it is impractical to attempt to deal with all the possible transitional problems that may arise in the application of the new law to various circumstances, subdivision (h) provides a safety-valve that permits the court to vary the application of the new law where there would otherwise be a *substantial impairment of procedure or justice*. This provision is intended to apply *only in the extreme and unusual case*, and is not intended to excuse compliance with the basic transitional provisions *simply because of minor inconveniences or minor impacts on expectations or other interests*." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code, *supra*, p. 9, italics added.)

There is no showing on the record that application of the new law would substantially interfere with the conduct of the proceedings or the rights of the parties. Furthermore, the right to a jury trial in a probate proceeding is not a constitutional right. (*In re Escover* (1930) 108 Cal.App. 697, 698 [292 P. 167].) Despite the fact it was a statutory right for a lengthy period of time, denial of a jury trial under the new law does not constitute a substantial impairment of justice. It is clear that Deanne and Ross expected to be able to present their case to a jury; however, such a minor impact on this expectation does not warrant application of section 3, subdivision (h).

The court did not abuse its discretion in denying the request for a jury trial.

## II

### *Sufficiency of Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. Respondent shall recover all costs on appeal.

Hollenhorst, J., and McKinster, J., concurred.

---

*See footnote, *ante*, page 995.