[No. D041026. Fourth Dist., Div. One. Feb. 19, 2004.]

Estate of BERNICE E. STODDART, Deceased.

HELEN WILSON, Petitioner and Appellant, v.
THOMAS J. HALL, as Executor, etc., et al., Objectors and Respondents.

HELEN WILSON, Plaintiff and Appellant, v.
THOMAS J. HALL, as Trustee, etc. Defendant and Respondent.

## COUNSEL

Gerhard Stoll and Charles A. Triay for Petitioner and Appellant and for Plaintiff and Appellant.

Richard Benes; Beamer, Lauth, Steinley & Bond and Stephen A. Bond for Objector and Respondent and for Defendant and Respondent Thomas J. Hall.

Bruce Merchant, in pro. per.; Joanne Merchant, in pro. per.; Sherry Butler, in pro. per.; Duane S. Horning and Associates, California Business Law Group and Duane S. Horning for Objectors and Respondents.

## OPINION

## AARON, J.—

### I.

### INTRODUCTION

Helen Wilson appeals from orders in two consolidated probate proceedings to determine the beneficiaries to the Henry and Bernice Stoddart Inter Vivos Trust (the trust). The trustors, Henry Stoddart (Henry) and Bernice Stoddart (Bernice), were husband and wife. They directed distribution of the trust for the benefit of their son, George Stoddart (George), upon the death of the trustors.[1] However, George predeceased both Henry and Bernice, and the trust provided no alternative distribution. Henry died in 1991 and Bernice died in 2000. After Bernice died, Wilson, who is Henry's niece and claims to be an heir of Henry and George, filed petitions in *Estate of Bernice E. Stoddart* (Super. Ct. San Diego County, 2001, No. P177375) (estate case) and *Wilson v. Hall,* (Super. Ct. San Diego County, 2001, No. P180143) (trust case), claiming she was entitled to a portion of the trust under the laws of intestacy, as an heir of Henry. The probate court denied Wilson's petitions and ordered the trust distributed to Bernice's estate. Wilson appeals from these orders, as well as from orders denying her motions for reconsideration.

Wilson claims that amendments to the Probate Code that purportedly would entitle her to distribution of a portion of the trust as an intestate heir of Henry, and which took effect after the probate court made its orders, apply to this case on appeal. In the alternative, Wilson claims that under the law in effect at the time the probate court issued its orders, Bernice's estate was not entitled to distribution of the entire trust, and that George's heirs were entitled

---

[1] We use first names for purposes of clarity and intend no disrespect.

to a portion of such distribution. Respondent Thomas J. Hall contends that Wilson's appeal of the probate court's original orders is untimely, and that the orders denying her motions for reconsideration are not appealable.

We conclude that Wilson's appeal of the underlying orders is timely. We also conclude that the probate court's orders denying Wilson's motions for reconsideration are not appealable. We further conclude that the law in effect at the time the probate court made its orders applies to the issues raised in this case on appeal and that, under that law, the trust is distributable to Bernice's estate. We therefore affirm the probate court's orders denying Wilson an interest in the trust and ordering that the trust be distributed to Bernice's estate. We dismiss that portion of Wilson's appeal taken from the court's orders denying her motions for reconsideration.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Henry and Bernice executed the trust in 1975. The trust contained their community property. The trust provided that upon the death of the first trustor, the trust would be divided into two trusts, Trust A and Trust B. Trust B would be comprised of assets and interests belonging to the first trustor to die, and Trust A would be comprised of assets and interests belonging to the survivor. Both Trust A and B were to be administered for the benefit of the survivor during the survivor's life. In addition, the survivor was entitled to elect to direct full distribution of Trust A during his or her lifetime. The trust further directed that upon the survivor's death, any of Trust A not effectively appointed by the survivor would be added to Trust B. With respect to how the trust should be distributed upon the death of the survivor trustor, the trust provided:

"Upon the death of the survivor of the Trustors, the successor Trustee shall distribute the trust estate to George Henry Stoddart in Trust. George Henry Stoddart shall receive the net income from the Trust Estate in quarterly installments until he reaches the age of 45 years, at which time the trust shall terminate and all proceeds (both principal and interest) of the Trust Estate shall be distributed to George Henry Stoddart."

George predeceased both Henry and Bernice. The trust contained no alternative disposition.

Henry died testate in 1991. His will provided in relevant part:

"I give all the rest and residue of my estate, both real and personal, of whatever nature and wheresoever situated, to my wife, Bernice E. Stoddart,

as Trustee, if she survives me, and if she does not survive me, then to my son, George Henry Stoddart, as successor Trustee of [the trust] . . . .

"If for any reason the disposition as above set forth is not operative or is invalid, or if the trust referred to fails or has been revoked, then I give the residue of my estate to my wife, Bernice E. Stoddart, if she survives me and if she does not survive me, then to my son, George Henry Stoddart, and if he does not survive me, then to his heirs by right of representation."

Bernice died in 2000. In September 2001, Wilson filed petitions in both the trust case and the estate case asserting a right to distribution of a portion of Trust B under the laws of intestacy.

On June 20, 2002, the probate court entered orders denying Wilson's petitions in both the trust case and the estate case. The orders were the same in all material respects. The court determined that George had predeceased the trustors, and that the trust contained no alternative distribution. The court concluded that the common law of trusts provides that under such circumstances, the trust reverts to the trustor who contributed the property. Because Henry contributed the assets in Trust B, the court determined that those assets reverted to him, to be distributed consistent with the provisions of his will.

The court then interpreted Henry's will and concluded that the distribution of Trust B under the terms of the trust was "not operative or is invalid." Because Bernice survived Henry, the court concluded that Henry's will directed distribution of all of Trust B to Bernice.

The court further noted that Henry's probate estate was closed and that there was no reason to open that estate merely in order to pass Trust B to that estate and then distribute it to Bernice's estate. The court observed that all of the persons who claimed to be intestate heirs of Henry were present at the hearing on this matter. The court noted that, at that hearing, all of the alleged heirs gave their consent to distributing Trust B directly to Bernice's estate in lieu of opening Henry's estate. The court denied Wilson's petitions in both cases and ordered Trust B distributed to Bernice's estate in the trust case.

On July 5, 2002, Wilson filed motions for reconsideration in both cases. On September 24, 2002, the probate court orally denied the motions for reconsideration. On October 3, 2002, Wilson filed an appeal from the June 20, 2002 orders denying her petitions and the September 24, 2002 orders denying her motions for reconsideration. On October 8, 2002, the probate court entered written orders denying the motions for reconsideration.

## III.

## DISCUSSION

A. *The June 20, 2002 Orders Are Appealable; the Probate Court's Orders Denying Reconsideration of These Orders Are Not*

1. *Wilson's Appeal from the Probate Court's June 20, 2002 Orders Is Timely*

Hall claims that Wilson's appeal from the probate court's June 20, 2002 orders is untimely and must be dismissed. We disagree.

California Rules of Court, rule 3(d) provides in relevant part:

"If any party serves and files a valid motion to reconsider an appealable order under Code of Civil Procedure section 1008, subdivision (a), the time to appeal from that order is extended for all parties until the earliest of: [¶] . . . [¶] (2) 90 days after the first motion to reconsider is filed . . . ."

Hall concedes that if Wilson's July 5, 2002 filings were "*valid* motion[s] to reconsider," her appeal of the June 20, 2002 orders is timely. (Cal. Rules of Court, rule 3(d), italics added.) However, Hall claims that Wilson's motions for reconsideration were not valid because the probate court's June 20, 2002 rulings were final *judgments*, and that a motion for reconsideration may not be brought after a final judgment. Hall thus contends that the extension of time to appeal provided in rule 3(d) does not apply because Wilson's July 5, 2002 motions were not "valid motion[s] to reconsider. . . ." (Cal. Rules of Court, rule 3(d).) We conclude that the court's June 20, 2002 rulings were final *orders* and not final *judgments*, and that the motions for reconsideration of these orders were valid.

Wilson filed her petition in the estate case pursuant to Probate Code[2] section 11700. Section 11700 authorizes petitions seeking a determination of the persons entitled to distribution of an estate. Section 11705, subdivision (a) expressly provides that in ruling on such a petition, "[t]he court shall make an *order* that determines the persons entitled to distribution of the decedent's estate and specifies their shares." (Italics added.) In addition, section 1303 specifies that "the grant or refusal to grant the following *orders* is appealable: [¶] . . . [¶] (f) Determining heirship, succession, entitlement, or the persons to whom distribution should be made." (Italics added.) Consistent with these

---

[2] Unless otherwise specified, all subsequent statutory references are to the Probate Code.

statutes, the court's ruling in the estate case stated that it was an *"Order* on Petition of Helen Wilson, To Determine Heirship." (Italics added.)

In the trust case, Wilson filed her petition pursuant to section 17200, which allows a person to petition the court for the purpose of "[a]scertaining beneficiaries and determining to whom property shall pass or be delivered upon final or partial termination of [a] trust, to the extent the determination is not made by the trust instrument." (§ 17200, subd. (b)(4).) Section 1304 provides that, "[w]ith respect to a trust, the grant or denial of the following *orders* is appealable: [¶] (a) Any final *order* under Chapter 3 (commencing with Section 17200) of Part 5 of Division 9. . . ." (Italics added.) Further, as in the estate case, the court designated the ruling in the trust case an "order."

Hall relies on *Estate of Wise* (1949) 34 Cal.2d 376 [210 P.2d 497] and *Estate of Roberts* (1945) 27 Cal.2d 70 [162 P.2d 461] to support his contention that the probate court's rulings on Wilson's petitions were final judgments. However, *Wise* and *Roberts* both involved former sections 1080–1082, which have been superseded. Those sections provided for a "special advisory proceeding in probate to determine heirship, with the conflicting claimants regarded in much the same light as if engaged in a civil action." (12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 688, p. 718.) Witkin explains that such a proceeding was a separate action in which participants were granted the right to a jury trial and " [t]he *judgment* determined those persons entitled to distribution of the decedent's estate and specified their interests." (*Id.* at § 688, p. 719, italics added.)

The proceeding provided for in former sections 1080–1082, discussed in *Wise* and *Roberts*, was replaced by the procedure provided in sections 11700–11705. (See 12 Witkin, Summary of Cal. Law, *supra*, § 689, p. 720.) The revised procedure eliminated the special proceeding, the jury trial and the final *judgment* discussed in *Wise* and *Roberts*. Therefore, those cases are inapposite.

■ We conclude that the probate court's June 20, 2002 rulings were appealable orders, and not final judgments. Wilson's appeal was filed October 3, 2002, which was 90 days after she filed her motions for reconsideration. Therefore, her appeal is timely pursuant to California Rules of Court, rule 3(d).

### 2. *The Orders Denying Wilson's Motions for Reconsideration Are Not Appealable*

Wilson's motions for reconsideration were brought in the context of a probate proceeding. It is well established that "[a]ppeals which may be taken

from orders in probate proceedings are set forth in . . . the Probate Code, and its provisions are exclusive." (*Estate of Downing* (1980) 106 Cal.App.3d 159, 163 [164 Cal.Rptr. 787].) "There is no right to appeal from any orders in probate except those specified in the Probate Code." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 156, p. 221.) "Appeals in general probate . . . matters are limited." (*Conservatorship of Smith* (1970) 9 Cal.App.3d 324, 327 [88 Cal.Rptr. 119].) "[I]f there was a free appeal in every probate matter, estates could be unreasonably delayed." (*Ibid.*)

■ Code of Civil Procedure section 904.1, subdivision (a)(10) provides that an appeal may be taken "[f]rom an order made appealable by the provisions of the Probate Code . . . ." An order denying a motion for reconsideration is not among the orders made appealable by the Probate Code. (See §§ 1303, 1304.) Further, to allow an appeal from an order denying a motion for reconsideration would be contrary to the Probate Code's purpose to foster the expeditious resolution of estate matters. In the absence of specific statutory authority authorizing such appeals, we conclude that the court's orders denying Wilson's motions for reconsideration are not appealable.[3]

We reject Wilson's reliance on *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280 [73 Cal.Rptr.2d 596] for the proposition that her appeal from the orders denying her motions for reconsideration is subsumed in her appeal from the underlying orders. *Trujillo* involved an appeal from a judgment entered *after* an order denying reconsideration of an order granting judgment notwithstanding the verdict. (*Id.* at p. 284.) The *Trujillo* court noted that "the order denying reconsideration is . . . subsumed in the appeal from the judgment." (*Id.* at p. 285, fn. 2.) In this case, Wilson is appealing from underlying orders entered *before* the orders denying the motions for reconsideration.

B. *The Validity of the Probate Court's June 20, 2002 Orders Are Governed by the Law in Effect on the Date of the Orders*

■ Wilson argues that under section 3, the validity of the probate court's June 20, 2002 orders is governed by amendments to the Probate Code that took effect after the orders were entered. Specifically, Wilson argues that we must apply sections 21111 and 21114, as amended, which became operative on January 1, 2003 (the 2002 amendments), to our review of the June 20, 2002 orders. She claims that under this new law, a portion of Trust B would pass to her as an intestate heir of Henry. This claim raises an issue of

---

[3] Because we decide the issue of the appealability of the orders denying Wilson's motions for reconsideration on this ground, we need not consider Hall's arguments regarding the nonappealability of the orders.

statutory interpretation, which we review de novo. (See, e.g., *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 597 [3 Cal.Rptr.3d 593].)

"Section 3 provides rules for applicability of changes to the Probate Code." (*Rice v. Clark* (2002) 28 Cal.4th 89, 99 [120 Cal.Rptr.2d 522, 47 P.3d 300] (*Rice*).) It provides in relevant part:

"(c) *Subject to the limitations provided in this section*, a new law applies on the operative date to all matters governed by the new law, regardless of whether an event occurred or circumstance existed before, on, or after the operative date, including, but not limited to, creation of a fiduciary relationship, death of a person, commencement of a proceeding, making of an order, or taking of an action.

"(d) If a petition, account, report, inventory, appraisal, or other document or paper is filed before the operative date, the contents, execution, and notice thereof are governed by the old law and not by the new law; but any subsequent proceedings taken after the operative date concerning the petition, account, report, inventory, appraisal, or other document or paper, including an objection or response, a hearing, an order, or other matter relating thereto is governed by the new law and not by the old law.

"(e) *If an order is made before the operative date, including an order appointing a personal representative, guardian, conservator, trustee, probate referee, or any other fiduciary or officer, or any action on an order is taken before the operative date, the validity of the order or action is governed by the old law and not by the new law*. Nothing in this subdivision precludes proceedings after the operative date to modify an order made, or alter a course of action commenced, before the operative date to the extent proceedings for modification of an order or alteration of a course of action of that type are otherwise provided by statute." (§ 3, italics added.)

The California Supreme Court has described section 3 as including a "general rule of retroactivity set out in subdivision (c)," as well as "exceptions to . . . subdivision (c)'s rule of retroactivity." (*Rice, supra,* 28 Cal.4th at p. 100.) Similarly, the California Law Revision Commission has explained the statutory scheme provided in section 3 in the following manner: "The general rule prescribed in subdivision (c) is that a new law applies immediately on its operative date to all matters, including pending proceedings. *The general rule is qualified by the exceptions* listed in subdivision (d) (contents, execution, and notice of papers and documents are governed by the law applicable when the paper or document was filed), subdivision (e) (*orders are governed by the law applicable when the order was made*, subject to any

applicable modification procedures) . . . ." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 3, p. 10, italics added.) "[R]eports and interpretive opinions of the Law Revision Commission are entitled to great weight" in discerning legislative intent. (*Hale v. Southern California IPA Medical Group, Inc.* (2001) 86 Cal.App.4th 919, 927 [103 Cal.Rptr.2d 773].)

In this case, all of the probate court's orders at issue were made prior to the operative date of the 2002 amendments. Therefore, on appeal, pursuant to subdivision (e)'s exception to subdivision (c)'s rule of retroactivity, "the validity of the order[s] . . . [are] governed by the old law and not by the new law." (§ 3, subd. (e).)

In *In re Marriage of Heikes* (1995) 10 Cal.4th 1211, 1214 [44 Cal.Rptr.2d 155, 899 P.2d 1349] (*Heikes*), the California Supreme Court reached the same conclusion in interpreting a nearly identical statute contained in the Family Code. Family Code section 4, subdivision (e) provides: "If an order is made before the operative date, or an action on an order is taken before the operative date, the validity of the order or action is governed by the old law and not by the new law."

In *Heikes*, the Supreme Court considered which law governed on an appeal from the trial court's granting of a new trial in a marital dissolution action. The court stated: "Because the trial court's judgment in the present case was entered before January 1, 1994, the operative date of the Family Code, its validity is governed by statutory provisions then in force, including [Civ. Code] sections 4800.1 and 4800.2. (Fam. Code, § 4, subd. (e).)" (*Heikes*, *supra*, 10 Cal.4th at p. 1214, fn. 1.)

█ Likewise, in this case, because the trial court's order was made before the operative date of the 2002 amendments, the order's validity is governed by the statutory provisions in force at the time of the trial court's order.

Wilson argues that the Legislature intended the term "including" in section 3, subdivision (e) to restrict the orders subject to the subdivision's exception only to those orders "appointing a personal representative, guardian, conservator, trustee, probate referee, or any other fiduciary or officer." (§ 3, subd. (e).) We disagree.

The context of section 3, subdivision (e) clearly indicates that the Legislature did not intend to restrict the orders subject to subdivision (e) to those specifically mentioned. To begin with, had the Legislature intended subdivision (e) to be narrowly restricted to the orders listed, it could simply have omitted the words "including an order." It did not. Moreover, as Wilson

acknowledges, the term "includes" is ordinarily a word of enlargement and not limitation. Further, the cases Wilson cites in which courts have concluded that a statute used the word "includes" in a limiting sense while providing a " 'statutory definition of a thing as "including" certain things,' " are inapposite. (*Coast Oyster Co. v. Perluss* (1963) 218 Cal.App.2d 492, 501 [32 Cal.Rptr. 740], quoting *People v. Western Airlines, Inc.* (1954) 42 Cal.2d 621 [268 P.2d 723].) Section 3, subdivision (e) does not provide a statutory definition of an "order," but rather lists some of the orders that will be subject to the subdivision (e) exception. In other words, subdivision (e)'s list of orders is illustrative rather than definitional.

Wilson also argues that "section 3, subdivision (c) requires that the new law be applied to this appeal from the making of the heirship orders because a valid appeal is an integral part of 'making' of a valid order." Wilson cites *Marriage of Bouquet* (1976) 16 Cal.3d 583, 586 [128 Cal.Rptr. 427, 546 P.2d 1371], to support her assertion that an appellate court participates in the "making" of an order when it reviews a probate court's order. However, *Bouquet* does not stand for this broad proposition. The *Bouquet* court concluded merely that the statute at issue in that case, Civil Code section 5118, had retroactive effect in all cases that had not been finally adjudicated prior to the statute's operative date. We reject Wilson's contention that a valid appeal is part of the "making" of an order. The order in this case was "made before the operative date" of the 2002 amendments to the Probate Code. (§ 3, subd. (e).)

Finally, Wilson relies on *Estate of Gardner* (1991) 1 Cal.App.4th 995 [2 Cal.Rptr.2d 664], in which the Court of Appeal concluded that pursuant to section 3, an amendment to the Probate Code that eliminated the right to a jury trial applied to the appellants' jury trial request. However, *Gardner* does not support Wilson's argument in this case because *Gardner* did not involve an order made *before* the amendment's operative date. Therefore, the *Gardner* court had no occasion to consider section 3, subdivision (e).

■ We conclude that under section 3, the 2002 amendments to sections 21111 and 21114 do not apply to our review of the probate court's orders since those orders were made before the operative date of the 2002 amendments. Therefore, we need not consider Wilson's argument that pursuant to the 2002 amendments, she was entitled to distribution of a portion of Trust B.

### C. *Trust B Should Be Distributed to Bernice's Estate*

Wilson argues that Bernice's estate is not entitled to distribution of Trust B under the law in effect at the time of the probate court's June 20, 2002 orders, on four grounds. We reject each of Wilson's arguments.

### 1. *The Trust Did Not Reveal an Intent to Preclude Bernice or Her Estate from Receiving the Trust B Principal*

■ Wilson maintains that the trust revealed an intent to preclude Bernice or her estate from receiving the Trust B principal, and that the probate court erred by ignoring this intent when it ordered Trust B distributed to Bernice's estate. This argument raises a claim of interpretation of the trust, which we review de novo. (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73 [70 Cal.Rptr.2d 887].)

Wilson refers to two provisions of the trust to support of her argument. First, she notes that the trust did not allow Bernice to invade the principal of Trust B and did not provide for a means by which Trust B could pass to Bernice's estate. However, this establishes merely that the trust itself does not affirmatively grant Bernice or her estate the principal of Trust B. This provision does not reveal an intent to *preclude* Bernice or her estate from taking pursuant to Henry's will if the trust failed to pass to George or his heirs.

■ Second, Wilson notes that the trust provided that Bernice, as survivor of Henry, could invade Trust A's principal, but could not invade Trust B's principal. Wilson argues that this "assured both spouses that all of the property would be disposed of as both had agreed. . . ." Yet, the basis of the dispute in this case is that the property in Trust B *cannot* be disposed of as both Henry and Bernice had agreed because George predeceased Bernice. This provision does not reveal an intent to preclude Bernice or her estate from receiving the principal of Trust B if Trust B could not be distributed as Henry and Bernice had agreed. Accordingly, we conclude that the trust did not reveal an intent to preclude Bernice or her estate from receiving the Trust B principal.[4]

### 2. *Section 15410 Does Not Apply Because Henry's Intent Is Not Expressed in the Trust Instrument*

Wilson argues that the probate court failed to distribute the trust in accordance with section 15410. We review this statutory interpretation argument de novo. (See, e.g., *Baker-Hoey v. Lockheed Martin Corp., supra*, 111 Cal.App.4th at p. 597.) We conclude that this section does not apply because Henry's intent was not revealed in the *trust instrument*.[5]

---

[4] Because we reject Wilson's argument on the merits, we need not consider Hall's claim that Wilson is estopped from raising this argument because it is contrary to the position Wilson took in the probate court.

[5] Therefore, we need not consider Hall's estoppel claim.

Section 15410 provides in relevant part: "At the termination of a trust, the trust property shall be disposed of as follows: [¶] (c) In any other case, as provided in the trust instrument or in a manner directed by the court that conforms as nearly as possible to the intention of the settlor *as expressed in the trust instrument*." (Italics added.)

Wilson claims that section 15410 required the court to distribute the trust in accordance with Henry's intentions as expressed in his *will*. However, section 15410 plainly and unambiguously refers to the relevant intent as that "expressed in the trust instrument," not the intent expressed in the trustors' wills. In any event, as discussed in part III.C.4., the probate court *did* order Trust B distributed in accordance with Henry's will. However, rather than distributing the trust directly pursuant to section 15410, the court ordered the distribution after it concluded that pursuant to the common law, Trust B reverted to Henry's estate to be distributed in accordance with his will.[6]

We conclude that the probate court did not violate section 15410 by failing to distribute the trust in accordance with Henry's will.

3. *Section 21111, As Amended Effective January 1, 2002, Does Not Preclude the Transfer of a Future Interest to Henry's Estate*

Wilson argues that section 21111, as amended effective January 1, 2002, precludes the transfer of future interests to a decedent's estate. She maintains that Trust B is such a future interest and that the probate court therefore erred in initially transferring Trust B to Henry's estate.[7] Specifically, Wilson contends that the probate court improperly relied on the 2001 version of section 21111 because the parties failed to cite to the 2001 amendments to the statute. We review this statutory interpretation argument de novo. (See, e.g., *Baker-Hoey v. Lockheed Martin Corp.*, *supra*, 111 Cal.App.4th at p. 597.)

Section 21111, as amended by Statutes 2001, chapter 417, section 11, provided in relevant part:

"(a) If a transfer, *other than a residuary gift or a transfer of a future interest*, fails for any reason, the property is transferred as follows:

"(1) If the transferring instrument provides for an alternative disposition in the event the transfer fails, the property is transferred according to the terms of the instrument.

---

[6] We discuss the propriety of this order in part III.C.4.

[7] We determined in part III.B. that the amendments to section 21111 that took effect on January 1, 2003, do not apply to this appeal.

"(2) If the transferring instrument does not provide for an alternative disposition but does provide for the transfer of a residue, the property becomes a part of the residue transferred under the instrument.

"(3) If the transferring instrument does not provide for an alternative disposition and does not provide for the transfer of a residue, the property is transferred to the decedent's estate." (Italics added.)

Prior to the 2001 amendments, section 21111 provided in relevant part: "(a) If a transfer, other than a residuary gift or a transfer of a future interest, fails for any reason, the property transferred becomes a part of the residue transferred under the instrument." (§ 21111, as amended by Stats. 1996, ch. 563, § 32, italics added.)

Both versions of section 21111, by plain and unambiguous language, explicitly provide that transfers of future interests do not fall within the scope of that statute. Wilson asserts that Trust B is a future interest.[8] Therefore, neither version of section 21111 provides any guidance as to how Trust B is to be transferred. Accordingly, we reject Wilson's incorrect assertion that section 21111 "explicitly exclude[s] future interests from transfer to [Henry's] estate." We also reject Wilson's argument that the "necessary implication" of the 2001 amendments was to preclude transfers of "future interests" to Henry's estate. Given that both versions of section 21111 expressly exclude transfers of future interests from falling within their scope, the 2001 amendments have no impact on the issues in this case.

### 4. *Trust B Passed to Bernice's Estate Through Henry's Will*

 Wilson contends that the purpose of the trust was to pay income to Henry, Bernice and George, and that the trust terminated on the death of the last of these three. Wilson further argues that the court should have construed Henry's will as evincing an intent to pass Trust B to George's heirs by right of representation. This argument raises a claim pertaining to the interpretation of Henry's will, which we review de novo. (*Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1134 [114 Cal.Rptr.2d 865].)

Henry's will provides: "If for any reason the disposition as above set forth is not operative or is invalid, or if the trust referred to fails or has been revoked, then I give the residue of my estate to my wife, Bernice E. Stoddart, if she survives me and if she does not survive me, then to my son, George Henry Stoddart, and if he does not survive me, then to his heirs by right of representation."

---

[8] Hall argues that Trust B is a residuary gift. We need not determine whether Trust B is a residuary gift or, instead, a future interest, because both are expressly excluded from the scope of section 21111.

Wilson maintains that this provision in Henry's will means that if Henry, Bernice and George were all deceased, Henry intended that any property remaining in his estate go to George's heirs by right of representation. We disagree. The plain language of the will states Henry's intent to pass the residue to Bernice, if the trust were either not operative or invalid, and Bernice survived Henry. Bernice did survive Henry. Neither the will nor the Probate Code require that Bernice survive the distribution of Henry's estate in order to receive the residue of the estate. (See § 11801, subd. (a) [providing that the share of a beneficiary who survives a decedent, but dies before distribution, shall be distributed as though the distribution were made while the beneficiary was alive].) Accordingly, Bernice was entitled to the residue of Henry's estate, including the assets in Trust B.

## IV.

## CONCLUSION

Wilson's appeal from the probate court's underlying orders denying her petitions is timely. However, the probate court's orders denying her motions for reconsideration are not appealable. Pursuant to section 3, the law in effect at the time the probate court made its orders applies to the issues raised in this appeal. Under that law, Bernice's estate is entitled to distribution of Trust B.

## V.

## DISPOSITION

The probate court's orders entered June 20, 2002, are affirmed. The portion of Wilson's appeal taken from the probate court's orders denying her motions for reconsideration is dismissed. The respondents are entitled to costs on appeal.

McConnell, P. J., and Nares, J., concurred.

A petition for a rehearing was denied March 10, 2004, and appellant's petition for review by the Supreme Court was denied May 19, 2004.