[No. B137947. Second Dist., Div. Three. Jan 30, 2001.]

MEREDITH S. HALE, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA IPA MEDICAL GROUP, INC., et al.,
Defendants and Respondents.

920

**COUNSEL**

Gary D. Stabile for Plaintiff and Appellant.

Sulmeyer, Kupetz, Baumann & Rothman and Elissa D. Miller for Defendant and Respondent Southern California IPA Medical Group, Inc.

Solomon, Saltsman & Jamieson and Stephen Allen Jamieson for Defendants and Respondents Ronald Accomazzo, Jerome Kornfeld, Rene Osman, Donald W. Sobel and Lawrence Stein.

## OPINION

**KLEIN, P. J.**—Meredith S. Hale, M.D. (Hale) appeals a judgment of dismissal in favor of defendants and respondents Southern California IPA Medical Group, Inc. (SCIPA), and SCIPA's directors, Ronald Accomazzo, M.D., Jerome Kornfeld, M.D., Rene Osman, M.D., Donald W. Sobel, M.D. and Lawrence Stein, M.D. (the directors) (collectively respondents).

The issue presented is whether Corporations Code section 800,[1] requiring the plaintiff in a shareholder derivative action to furnish security for defendants' expenses if the trial court finds there is no reasonable probability the corporation will benefit from the action, authorizes the trial court to require the plaintiff to post up to $50,000 in security for each moving defendant, or whether the aggregate amount of the bonds that may be required is limited to $50,000.

We conclude $50,000 is the maximum amount of the bond that may be required under section 800, regardless of the number of moving defendants. Therefore, the judgment is reversed with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleges Hale is a shareholder of SCIPA. In 1995, SCIPA sold substantially all of its assets to third parties. Hale filed a shareholder derivative action naming as defendants SCIPA and its five individual directors. Hale alleged the directors had conflicts of interest and were not disinterested, ignored better purchase offers, refused to follow up on other potential purchasers and misrepresented the transaction at a special shareholders meeting convened to approve the sale.

Shortly after the action was commenced, SCIPA and the directors each filed motions under section 800, subdivisions (c) and (d), to require Hale to post security. Hale opposed the motions. The directors argued, inter alia, that under section 800, subdivision (d), the trial court could require Hale to post a bond of up to $50,000 for each of the moving defendants.

---

[1]All further statutory references are to the Corporations Code, unless otherwise indicated.

The trial court agreed with defendants and ordered Hale to post six bonds, $50,000 for SCIPA and $40,000 for each of the five directors, a total of $250,000. When Hale did not post the bonds as ordered, the trial court entered a judgment of dismissal. This appeal followed.[2]

## CONTENTIONS

Hale contends the $50,000 statutory limit on security is in the aggregate for all the moving parties.

## DISCUSSION

1. *The governing statutory scheme.*

Chapter 8 of the General Corporation Law is entitled Shareholder Derivative Actions. Section 800 thereof covers conditions, security, motions for order, and determinations.

Under the statute, a party may move for an order requiring the plaintiff to furnish a bond "upon one or both of the following grounds: [¶] (1) That there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders. [¶] (2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity." (§ 800, subd. (c).)

At the hearing "upon any motion pursuant to subdivision (c), the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material (1) to the ground or grounds upon which the motion is based, or (2) to a determination of the probable reasonable expenses, including attorneys' fees, of the corporation and the moving party which will be incurred in the defense of the action. If the court determines, after hearing the evidence adduced by the parties, that the moving party has established a probability in support of any of the grounds upon which the motion is based, the court shall fix the amount of the bond, not to exceed fifty thousand dollars ($50,000), to be furnished by the plaintiff for reasonable expenses, including attorneys' fees, which may be incurred by the moving party and the corporation in connection with the action, including expenses for which the corporation may become liable pursuant to Section 317. A ruling by the

---

[2]Hale's appeal from the judgment of dismissal is proper. An order requiring a plaintiff to furnish security in a shareholder derivative action is not directly appealable. Such order is reviewable on an appeal from the judgment of dismissal. (*Woodman v. Ackerman* (1967) 249 Cal.App.2d 644, 652 [57 Cal.Rptr. 687] [dismissing purported appeal from order requiring plaintiff to furnish security under former § 834 (predecessor to § 800)].)

court on the motion shall not be a determination of any issue in the action or of the merits thereof. If the court, upon the motion, makes a determination that a bond shall be furnished by the plaintiff as to any one or more defendants, the action shall be dismissed as to the defendant or defendants, unless the bond required by the court has been furnished within such reasonable time as may be fixed by the court. [¶] (e) If the plaintiff shall, either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to the motion, furnish a bond in the aggregate amount of fifty thousand dollars ($50,000) to secure the reasonable expenses of the parties entitled to make the motion, the plaintiff has complied with the requirements of this section and with any order for a bond theretofore made, and any such motion then pending shall be dismissed and no further or additional bond shall be required." (§ 800, subds. (d) & (e).)[3]

2. *Ambiguity in section 800 with respect to aggregate amount of bond that may be ordered under subdivision (d) requires ascertainment of legislative intent.*

a. *Subdivision (d) of section 800 is ambiguous with respect to maximum amount of bond that may be ordered.*

Subdivision (d) of section 800 empowers the trial court, in ruling on a motion by the moving party, to require a bond "not to exceed fifty thousand dollars." However, subdivision (d) is silent with respect to whether, in a case involving multiple defendants, the trial court may require a bond up to $50,000 as to *each* moving defendant.

Subdivision (e) of section 800 provides that if the plaintiff, *"either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to the motion,* furnish[es] a bond in the aggregate amount of fifty thousand dollars ($50,000) to secure the reasonable expenses of the parties entitled to make the motion, the plaintiff has complied with the requirements of this section and with any order for a bond theretofore made, and any such motion then pending shall be dismissed *and no further or additional bond shall be required."* (Italics added.)

Thus, although subdivision (d) of section 800 is silent in this regard, subdivision (e) states that once the plaintiff has posted a $50,000 bond, the plaintiff has satisfied section 800 and no additional bond may be required. The language in subdivision (e) allowing a plaintiff to satisfy the statute by

---

[3]Subdivision (e) of section 800 enables the plaintiff to avoid the expense of what may be a futile opposition to a motion for security by furnishing a $50,000 bond, in which case no additional bond may be required.

posting a $50,000 bond *either before or after the hearing or order*, could be construed as providing that *in no case* may the required security exceed $50,000.

We also make the observation that if subdivision (d) of section 800 were construed as allowing for a $50,000 bond in favor of *each* moving defendant, while subdivision (e) allows the plaintiff to take preemptive action by posting a $50,000 bond in the first instance, an absurdity could result. Under the interpretation urged by respondents herein, if there were 20 moving defendants, the plaintiff might be facing a $1 million bond requirement under subdivision (d). However, subdivision (e) clearly allows the plaintiff unilaterally to satisfy his or her obligation under the statute by posting a $50,000 bond either before or after the hearing or order. If subdivision (d) were construed as allowing the trial court to require a $50,000 bond for each moving defendant, there could be an enormous differential in the bond requirement, based purely on the happenstance of whether (1) the bond is posted pursuant to an order under subdivision (d), or (2) the plaintiff engages in an end run around subdivision (d) by posting a $50,000 bond up front pursuant to subdivision (e). Given the obvious tension between the aggregate $50,000 amount in subdivision (e), and the absence of an express cap in subdivision (d), we resort to the legislative history for guidance.

b. *Principles of statutory construction.*

■ "The touchstone of statutory interpretation is the probable intent of the Legislature. When interpreting a statute, we must ascertain legislative intent so as to effectuate the purpose of a particular law. Of course our first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) But language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance. (*Stanton* v. *Panish* (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372].) [¶] . . . Statutory language which seems clear when considered in isolation may in fact be ambiguous or uncertain when considered in context. (See *Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 207 [114 P.2d 592].)" (*Quarterman* v. *Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741].)

3.  *Legislative history reveals the 1982 amendment to section 800, which deleted language from subdivision (d) limiting security to $50,000 in the aggregate for all defendants, was not intended to effect a substantive change in the statute; $50,000 remains the aggregate limit, irrespective of the number of moving defendants.*

  a.  *Former section 834.*

Section 800 is derived from former section 834. (Historical and Statutory Notes, 23E West's Ann. Corp. Code (1990 ed.) foll. § 800, pp. 345-346.) Former section 834, subdivision (b), relating to security in derivative actions, authorized the court to require a plaintiff to furnish security "not to exceed twenty-five thousand dollars . . . for reasonable expenses, . . . which may be incurred by the moving party and the corporation in connection with such action[.]" (Stats. 1967, ch. 1191, § 1, p. 2903.) Former section 834, subdivision (b) further stated: "The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court upon showing that the security provided has or may become inadequate or is excessive, *but such order shall not increase the total amount of such security beyond twenty-five thousand dollars*[.]" (Stats. 1967, ch. 1191, § 1, pp. 2903-2904, italics added.) Former section 834 also permitted the plaintiff to satisfy his or her entire obligation under section 834 by furnishing $25,000 in security. (Former § 834, subd. (b); Stats. 1967, ch. 1191, § 1, p. 2904.)

  b.  *Section 800, as adopted in 1975.*

In 1975, former section 834 was repealed and recodified in section 800. (Stats. 1975, ch. 682, §§ 6, 7.) The new statute provided in relevant part: "(d) . . . If the court determines, after hearing the evidence adduced by the parties, that the moving party has established a probability in support of any of the grounds upon which the motion is based, the court shall fix the nature and amount of security, not to exceed fifty thousand dollars ($50,000) . . . . The amount of the security may thereafter be increased or decreased in the discretion of the court upon a showing that the security provided has or may become inadequate or is excessive, *but the court may not in any event increase the total amount of the security beyond fifty thousand dollars ($50,000)*. . . . [¶] (e) If the plaintiff shall, either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to such motion, post good and sufficient bond or bonds in the aggregate amount of fifty thousand dollars ($50,000) to secure the reasonable expenses of the parties entitled to make the motion, the plaintiff has complied with the requirements of this section and with any order for security theretofore made

pursuant hereto, and any such motion then pending shall be dismissed and no further or additional bond shall be required." (Stats. 1975, ch. 682, § 7, pp. 1571-1572, italics added.)

With respect to the 1975 enactment, the Legislative Committee Comment states, "[s]ubdivision (d) changes prior law by increasing the total amount of security which a plaintiff may be required to furnish for reasonable expenses. This increase is intended to partially compensate for the effects of inflation since this provision was enacted." (Legis. Com. com., 23E West's Ann. Corp. Code, *supra*, foll. § 800, p. 345.)

 c. *Section 800, as amended in 1976, expressly provided the aggregate security for all defendants could not exceed $50,000.*

Section 800 then was amended by Statutes 1976, chapter 641, section 17. The amended statute stated at subdivision (d) that "the court shall fix the nature and amount of security, not to exceed fifty thousand dollars ($50,000), to be furnished by the plaintiff[.]" (Stats. 1976, ch. 641, § 17, pp. 1542-1543.) Most importantly for our purposes, in giving the trial court discretion thereafter to modify the amount of the security, subdivision (d) stated "the court may not in any event increase the total amount of the security beyond fifty thousand dollars ($50,000) *in the aggregate for all defendants.*" (Stats. 1976, ch. 641, § 17, p. 1543, italics added.)

The 1976 statute also enabled the plaintiff to satisfy the statutory obligation by furnishing $50,000 in security, in which case no further security could be required. (Former § 800, subd. (e); Stats. 1976, ch. 641, § 17, p. 1543.)

 d. *Section 800, as amended in 1982, omitted subdivision (d)'s express limitation on the aggregate security, but no substantive change was intended in that regard.*

Next, section 800 was amended to its present form in 1982, as part of the California Law Revision Commission's consolidation of procedural provisions relating to statutory bonds and undertakings. (Stats. 1982, ch. 517, § 186, pp. 2364-2366; 16 Cal. Law Revision Com. Rep. (1982) 501, 507-508.) As discussed above, section 800, subdivision (d) now states "the court shall fix the amount of the bond, not to exceed fifty thousand dollars ($50,000), to be furnished by the plaintiff for reasonable expenses[.]" Section 800, subdivision (e), in turn, allows the plaintiff to satisfy the entire obligation under the statute by furnishing $50,000 in security, in which case no additional security may be required. *However, the 1982 legislation omitted*

*the language in the 1976 version of section 800, subdivision (d,) which had expressly limited the aggregate amount of the security for all defendants to $50,000.*

With respect to the 1982 amendment, the Law Revision Commission Comment states: "Section 800 is amended to delete provisions duplicated in the Bond and Undertaking Law. See Code Civ.Proc. §§ 996.010 (insufficient bond), 996.030 (reduced bond), 996.460 (judgment of liability), 995.710 (deposit in lieu of bond). *The other changes in Section 800 are technical.* (16 Cal.L.Rev.Comm. Reports 501)." (Cal. Law Revision Com. com., 23E West's Ann. Corp. Code, *supra*, foll. § 800, p. 345, italics added.)

■ In an effort to discern legislative intent, an appellate court is entitled to take judicial notice of the various legislative materials, including committee reports, underlying the enactment of a statute. (*Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 400, fn. 8 [276 Cal.Rptr. 524]; *Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 535, fn. 7 [260 Cal.Rptr. 713].) In particular, reports and interpretive opinions of the Law Revision Commission are entitled to great weight. (*Schmidt v. Southern Cal. Rapid Transit Dist.* (1993) 14 Cal.App.4th 23, 30, fn. 10 [17 Cal.Rptr.2d 340].)

■ Based on the Law Revision Commission's 1982 comment, we readily conclude the 1982 amendment to section 800, subdivision (d), was not intended to effect a substantive change in existing law insofar as it limited the aggregate security to $50,000. We see nothing in the legislative history to suggest the Legislature intended to replace the $50,000 aggregate amount with a scheme allowing the trial court to order the plaintiff to furnish up to $50,000 in security for each of an unlimited number of moving parties. Presumably, the Legislature believed the language omitted from the 1982 version of section 800, subdivision (d), was unnecessary in view of the language in subdivision (e) which states that if the plaintiff "either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to the motion," *in other words, at any time,* furnishes a $50,000 bond, *"no further or additional bond shall be required."* (§ 800, subd. (e), italics added.)

For these reasons, we conclude that in ruling on a motion pursuant to section 800, subdivision (d), the trial court's discretion is limited to requiring plaintiff to furnish security in the aggregate amount of $50,000 as to all

moving parties.[4] Therefore, the trial court herein erred in requiring Hale to furnish $250,000 in security. The resulting judgment of dismissal must be reversed with directions.

### e. *No need for trial court to redeteremine the issue.*

Hale contends that on remand the trial court should determine anew whether and in what amount to require security. The argument is meritless. Hale has not contended the trial court abused its discretion in requiring him to furnish security. Further, in view of the trial court's order requiring Hale to post six bonds, $50,000 for SCIPA and $40,000 for each of the five directors, for a total of $250,000, there is no likelihood that the trial court on remand would require any less than $50,000 in security. That amount is within the trial court's discretion. Therefore, we shall reverse the judgment with directions to enter a new order requiring Hale to furnish security in the aggregate amount of $50,000 for all moving parties.

### DISPOSITION

The judgment of dismissal is reversed with directions to enter a new order requiring Hale to furnish security in the aggregate amount of $50,000 for all moving parties. Hale to recover costs on appeal.

Croskey, J., and Aldrich, J., concurred.

---

[4]If our interpretation of section 800 is not what the Legislature intended, the statute could use clarification. (See *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 304, fn. 6 [81 Cal.Rptr.2d 456], and cases cited therein.)