[No. B163218. Second Dist., Div. Three. Jan. 30, 2004.]

UNION BANK OF CALIFORNIA, as Conservator, etc., Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; HENRY WILLIAMS, an Incompetent Person, etc., Real Party in Interest.

COUNSEL

Ferguson, Case, Orr, Paterson & Cunningham, Sandra M. Robertson and William B. Smith for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant Union Bank of California, N.A. (Union Bank), conservator of the estate of Henry Williams (Williams), filed its 21st accounting and report on the conservatorship in the Los Angeles Superior Court. The trial court approved the accounting and report, but also ruled the conservatorship had ceased to exist upon the repeal of the statute which gave rise to the conservatorship, and that Union Bank was required to file a petition to obtain letters of conservatorship. Union Bank now seeks review of that ruling.[1]

By way of background, the enactment of Probate Code former section 1485 in 1979 caused the then existing adult *guardianship* of Williams to be

---

[1] We construe Union Bank's appeal as a petition for writ of mandate. There is no appearance by any other party.

deemed a *conservatorship*.[2] The issue presented is what effect, if any, the 1990 repeal of former section 1485 had on the conservatorship.

We conclude the repeal of former section 1485 did not undo the conservatorship and did not revive the earlier guardianship. Therefore, the trial court's order must be vacated insofar as it directed Union Bank to file a petition for conservatorship herein.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1962, the Superior Court in San Bernardino County issued letters of guardianship, appointing American National Bank of San Bernardino, a predecessor of Union Bank, as guardian of the estate of Williams, an adult incompetent.[3] Veteran's benefits made up a significant part of the estate.

After letters of guardianship were issued in 1962, the guardian filed periodic accountings and reports with the superior court in San Bernardino County and regularly received court approval.

In 1979, the Legislature adopted former section 1485, which provided that adult *guardianships* were automatically transitioned into *conservatorships* without petition, order or any action by the conservator.[4]

Following the enactment of former section 1485, in keeping with the statute's conversion of guardianships into conservatorships, Union Bank's predecessor, acting as conservator, filed conservatorship accountings and reports in the superior court in San Bernardino County and received approving orders.

In 1990, former section 1485, having served its purpose, was repealed as part of the general repeal and reenactment of the Probate Code. (Stats. 1990, ch. 79, §§ 13, 14, p. 463 et seq.) The Law Revision Commission explicitly stated that because the transitional provision of section 1485 was no longer

---

[2] All further statutory references are to the Probate Code unless otherwise indicated.

[3] In 1964, American National Bank of San Bernardino merged with Bank of California, N.A., and the latter became the successor entity. Effective April 1, 1996, the title of Bank of California, N.A., changed to Union Bank of California, N.A.

[4] Former section 1485 provided: "(a) A guardianship of an adult, . . . in existence under this code on the operative date shall be deemed to be a conservatorship and is governed by the provisions of law applicable to conservatorships *without petition or order*, whether or not the *letters of guardianship or the title of the proceeding are amended as provided in this chapter.* [¶] (b) The validity of transactions and acts of a guardian or conservator shall not be affected by a misdescription of the office, nor shall any judgment, decree, or order of the court be invalidated by any such misdescription." (Stats. 1979, ch. 726, § 3, pp. 2341–2342, italics added.)

necessary it could be repealed. (Recommendation Proposing New Probate Code (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) pp. 1001, 1044; see Cal. Law Revision Com. com., 52A West's Ann. Prob. Code (2002 ed.) foll. §§ 1484, 1485, p. 126 ["Section 1485 of the repealed Probate Code is omitted from the new Probate Code because it is no longer necessary."].)

The repeal of former section 1485 did not alter the conservator's conduct herein. In 1992, 1994, and 1996, respectively, the conservator filed its 17th, 18th and 19th account current and report of conservator in the superior court in San Bernardino County and received orders settling the conservator's account.

In 1998, on its own motion, the Superior Court in San Bernardino County ordered the matter transferred to Los Angeles County based on its determination that the conservatee was a resident of Los Angeles County. Following the transfer, in 2000, Union Bank as conservator filed the 20th account and report of conservator in the Superior Court in Los Angeles County. As with the previous accounts and reports, the trial court acted on and approved the accounting and report.

On July 19, 2002, Union Bank as conservator filed its 21st conservatorship accounting and report in the Los Angeles Superior Court. The trial court again approved the conservator's account and report, but in an internally inconsistent ruling, it held the conservatorship was no longer in existence.

On its own motion, the trial court ruled the repeal of former section 1485 in 1990 had undone that statute's automatic conversion of adult guardianships into conservatorships and that Union Bank was required to file a petition for conservatorship. The trial court ruled: "The Court finds that a Conservatorship is required. Petitioner shall file a Petition for Conservatorship to obtain Letters of Conservatorship. Letters of Guardianship previously issued are insufficient. The Guardianship was not automatically converted to a Conservatorship because . . . Section 1485 . . . was repealed and does not apply."

Union Bank filed notice of appeal, seeking review of the order.

## CONTENTIONS

Union Bank contends the trial court erred as a matter of law in ruling the repeal in 1990 of former section 1485 had the effect of undoing what former section 1485 had accomplished and of reviving the earlier guardianship.

## DISCUSSION

1. *Standard of review.*

■ The sole issue on appeal is the effect of the repeal of former section 1485. The proper interpretation of statutory language is a question of law which this court reviews de novo, independent of the trial court's ruling or reasoning. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].)

2. *Principles of statutory construction.*

■ "The touchstone of statutory interpretation is the probable intent of the Legislature. When interpreting a statute, we must ascertain legislative intent so as to effectuate the purpose of a particular law. Of course our first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632–633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) But language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance. (*Stanton v. Panish* (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372].)" (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741].)

3. *The repeal of former section 1485 did not revive the earlier guardianship; the trial court erred in ruling that in the wake of the statute's repeal, Union Bank was required to petition for conservatorship.*

   a. *The evolution of the statutory scheme.*

In 1979, as part of a broad revision of the guardianship/conservatorship law, the Legislature converted all adult guardianships, including that in the estate of Williams, into conservatorships. (former § 1485, enacted by Stats. 1979, ch. 726, § 3, p. 2341.)

The Law Revision Commission Reports, which are entitled to great weight in interpreting statutes (*Hale v. Southern Cal. IPA Medical Group, Inc.* (2001) 86 Cal.App.4th 919, 927 [103 Cal.Rptr.2d 773]), explain the legislative intent

behind these changes. According to the Law Revision Commission, it was determined that guardianships should be eliminated for incompetent adults, that conservatorship was preferable because it avoided the stigma associated with the finding of incompetency required for an adult guardianship, and that the guardianship and conservatorship statutes should be replaced with a new comprehensive statute to eliminate unnecessary duplication and inconsistencies. (Guardianship-Conservatorship Law with Official Comments (June 1980) 15 Cal. Law Revision Com. Rep. (1980) pp. 451, 463, 477–478.)

Separately, the Commission recommended repeal of the Uniform Veterans' Guardianship Act (former §§ 2900–2918, added by Stats. 1979, ch. 726, § 3, pp. 2423–2427, derived from Stats. 1931, ch. 281, §§ 1650–1669, pp. 684–687) and that guardianships for veterans be governed by general law. (Recommendation Relating to U. Veterans' Guardianship Act (Oct. 1979) 15 Cal. Law Revision Com. Rep. (1980) pp. 1289, 1293–1294.)

Consistent with these recommendations, the Legislature repealed the Uniform Veterans' Guardianship Act (repealed by Stats. 1980, ch. 89, § 7, p. 226) and adopted former section 1485, effective January 1, 1981 (Stats. 1979, ch. 726, § 4, p. 2454), which section provided that adult guardianships were automatically deemed to be conservatorships "without petition or order." (former § 1485, subd. (a); see fn. 4, *ante*.)

A decade later, in 1990, former section 1485 was repealed as part of the overhaul of the Probate Code (Stats. 1990, ch. 79, §§ 13, 14, p. 463), with the Law Revision Commission expressly stating that because the transitions which former section 1485 had provided for had occurred, the statute had become unnecessary. (Recommendation Proposing New Probate Code (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) pp. 1001, 1044; see Cal. Law Revision Com. com., 52A West's Ann. Prob. Code (2002 ed.) foll. §§ 1484, 1485, p. 126.)

> b. *The repeal of former section 1485 did not revive former law and did not undo rights conferred by former section 1485.*

As stated in *People v. Hunt* (1871) 41 Cal. 435, 439, "[t]he repeal of an Act repealing a former Act does not revive the former Act, or give it any force and effect. This result can be accomplished only by the reenactment of the former Act."

This principle is codified in Government Code section 9607, which provides "no statute or part of a statute, repealed by another statute, is revived by the repeal of the repealing statute without express words reviving such repealed statute or part of a statute." (See, e.g., *D'Amico v. Board of Medical Examiners* (1970) 6 Cal.App.3d 716, 726 [86 Cal.Rptr. 245].)

■■■■■■■■■■■■■■■■■■

Here, the repeal of former section 1485 did not specify that the earlier statutory scheme was being revived. Moreover, the legislative history indicates there was no intent to revive the former adult guardianship law. Rather, the legislative history establishes that former section 1485 was repealed because it had served its purpose, namely, to convert adult guardianships into conservatorships, making the statute's continued existence unnecessary.

■ Accordingly, the adult guardianship herein, which was transformed into a conservatorship by the enactment of former section 1485, was not revived upon the repeal of former section 1485. The repeal of former section 1485 in 1990 did not invalidate the existing conservatorship of Williams and did not revive the earlier adult guardianship.

Thus, the conservatorship remained extant notwithstanding the repeal of former section 1485. The trial court erred in ruling that in the wake of the repeal of former section 1485, Union Bank was required to petition to obtain letters of conservatorship.[5]

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing respondent superior court to vacate its order insofar as it ruled the conservatorship ceased to exist upon the repeal of former section 1485 and required Union Bank to file a petition to obtain letters of conservatorship. Union Bank shall bear its own costs in this proceeding. (Cal. Rules of Court, rule 56.4(a).)

Croskey, J., and Aldrich, J., concurred.

---

[5] As an aside, we observe the trial court's interpretation of the effect of the repeal of former section 1485 would have created a morass of legal uncertainty. For example, if the conservatorship of Williams's estate had ceased to exist in 1991, it would call into question the effect of court approvals given to the conservator's accounting and reports since that time.