[No. B177992. Second Dist., Div. Three. Feb. 28, 2005.]

PAUL WOOLLS, Petitioner, v.
SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THOMAS C. TURNER et al., Real Parties in Interest.

COUNSEL

Paul Woolls, in pro. per., for Petitioner.

No appearance for Respondent.

Law Offices of John A. Belcher, John A. Belcher and Nicholas W. Song for Real Parties in Interest.

OPINION

**KLEIN, P. J.**—Petitioner Paul Woolls (Woolls) seeks a writ of mandate to set aside respondent superior court's order denying his petition to vacate an arbitration award obtained by real parties in interest Thomas C. Turner and Thomas Turner doing business as T&T Construction (collectively, Turner). Woolls moved to vacate the award on the ground the arbitration agreement failed to comply with Business and Professions Code section 7191.[1]

Section 7191 requires arbitration provisions in contracts for work on residential property of one to four units to satisfy certain disclosure requirements, *including an advisement to the consumer that he or she is giving up the right to have the dispute litigated in a court or jury trial.* (§ 7191, subd. (b).) The essential issue presented is the consequence of an arbitration agreement's noncompliance with section 7191.

We conclude the noncompliant arbitration provision cannot be enforced "against any person other than the licensee." (§ 7191, subd. (c).) Therefore, we grant Woolls's petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The two arbitration provisions.*

On October 8, 2002, Woolls, a homeowner, and Turner, a contractor, entered into a written agreement for the renovation and expansion of Woolls's single family residence (the Agreement). The Agreement, signed by the parties, contained the following arbitration provision: "All claims, disputes, and other matters in question between the parties to this Agreement, arising out of or relating to this Agreement or the breach thereof, *shall be decided by mediation and then arbitration* in accordance with the Construction Industry

---

[1] All further statutory references are to the Business and Professions Code, unless otherwise indicated.

Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. Notice of demand for arbitration shall be filed in writing with the other party of this Agreement and with the American Arbitration Association." (Italics added.)

On the same date, Woolls and Turner also initialed the cover sheet of a second, unsigned document which contained specifications for the project (Specifications). The Specifications contained the following arbitration provision: "Claims or disputes between the Contractor and the Owner arising from this Agreement that are not settled through negotiation shall be offered for mediation according to the rules of the American Arbitration Association. *Disagreements not settled by mediation shall be offered for arbitration* as per the rules of the American Arbitration Association. Work shall not be halted or slowed by the Contractor during negotiation, mediation, or arbitration of such disputes." (Italics added.)

Neither of these arbitration provisions included an advisement that by agreeing to arbitration, a party is waiving the right to a court or jury trial.

2. *Disputes arise and lead to Turner's instituting arbitration proceedings against Woolls.*

During the course of the work, disputes arose among Woolls, Turner and Stock Building Supply of California doing business as Terry Lumber (Terry Lumber)[2] regarding Turner's performance of the terms of the contract and Terry Lumber's billing for building materials. Ultimately, Woolls replaced Turner with other contractors to complete the work.

On or about October 8, 2003, Terry Lumber recorded a mechanics' lien against Woolls's property for the sum of $6,936.81.

On January 5, 2004, Terry Lumber filed suit against Turner and Woolls. The first cause of action against Turner pled a breach of contract. The second cause of action against Woolls sought foreclosure of the mechanics' lien.

On February 2, 2004, Woolls answered the complaint and filed a cross-complaint against Terry Lumber and Turner.

Turner initiated an arbitration proceeding against Woolls pursuant to the arbitration clause in the construction contract.

---

[2] Terry Lumber is not a party to the instant proceeding.

3. *The arbitration proceeds, notwithstanding Woolls's objections, and concludes in an award for Turner.*

On March 16, 2004, prior to the start of the arbitration, Woolls submitted written objections to the arbitrator, contending the arbitration agreement failed to comply with section 7191 in various particulars so as to render the arbitration clause unenforceable against Woolls.

Despite a pending motion by Woolls to stay the arbitration, and despite Woolls's objections to the arbitrator, the arbitrator proceeded with the hearing on March 16–18, 2004. According to the writ petition, Woolls participated in the arbitration "to preserve his rights and to prevent a runaway default judgment."

On April 5, 2004, the arbitrator issued an award, directing Woolls to pay $46,881.58 to Turner, as well as administrative fees, the arbitrator's compensation and expenses.

4. *Woolls unsuccessfully moves to vacate the award for noncompliance with section 7191.*

Turner filed a petition to confirm the award and Woolls filed a petition to vacate the award. Woolls again argued the arbitration agreement did not comply with section 7191, rendering it unenforceable.

On August 9, 2004, after hearing the matter, the trial court issued an extensive minute order, concluding the arbitration provision was enforceable against Woolls, "despite the absence of full compliance with the cautionary statements set forth in [section] 7191." The ruling provides:

"The parties do not dispute that they entered into two contracts for the construction on this project, both of which contained arbitration provisions. The parties also do not seriously dispute that neither of these arbitration provisions complies strictly with the requirements set forth in Business & Professions Code § 7191. . . . [¶] . . . [¶] *This statute, although enacted in 1994, has not yet been interpreted in any published appellate decision.* Woolls argues the proper interpretation of [section 7191,] subdivision (c) is that an arbitration provision which does not comply with the prior subdivision regarding font size and language cannot be enforced against anyone other than the licensee. [Turner] argues that the use [in subdivision (c)] *of the term 'may' permits discretion of the part of the trial court with respect to the enforcement of the provision,* and that circumstances here dictate against strict enforcement of this provision and in favor of

enforcing the arbitration provision against the home owner. There is a strong public policy in favor of arbitration of disputes and any doubts concerning the scope of arbitrable disputes should generally be resolved in favor of arbitration. [Citation.] When interpreting agreements to arbitrate, the court should generally liberally interpret such an agreement, and arbitration should be ordered unless the agreement clearly does not apply to the dispute in question. [Citation.] This statute, as it [a]ffects the enforceability of arbitration agreements, presumably should also be read in this context of favoring arbitration.

"In interpreting a statute, the court begins with the language of the statute as the most reliable indicator of legislative intent. [Citation.] Accordingly, where the word 'may' is used in a statute, it has been held that the word may be read to make the provisions permissive, rather than mandatory. [Citation.]

*"Here, the statute instructs that the arbitration provision 'may not' be enforced against a particular party, not that it 'shall not' be enforced. In these circumstances, the court finds that the use of the term 'may' gives rise to a permissive meaning, and may be construed to read that the court 'may' enforce a non-complying arbitration provision if the circumstances so warrant. Such circumstances are present here.* The statute appears primarily directed to putting a residential consumer on notice that he or she is giving up any rights to a jury trial and/or to an appeal of the arbitrator's decision. Business and Professions Code § 7191 (b). Here, however, *Woolls is a licensed attorney, who was fully aware that by signing an arbitration provision, he was waiving his right to a jury trial and his right to appeal. In fact, Woolls has testified that he objected to the inclusion of the arbitration provision in the agreements, that the parties actually negotiated this point, and that Woolls voluntarily executed the agreement knowing it contained an arbitration provision.* Moreover, even though Woolls raised the issue of fraud in the procurement of the provision at several junctures in the proceeding, he did not raise the issue of the provision's technical failure to follow Business & Professions Code § 7191 as a ground for this argument until the first day of the arbitration. Instead, Woolls has argued all along that he voluntarily signed the agreement, knowing it contained an arbitration provision, but that he agreed to arbitration based on fraudulent statements by Turner that Turner never had any client complain about his work. He has never argued that he did not fully appreciate the meaning and effect of the arbitration provision.

*"On the day of the arbitration, rather than pursue his then recognized rights under the Business & Professions Code, Woolls instead voluntarily participated in the arbitration, and raised his own cross claims. These circumstances indicate enforcement [of] the arbitration provision against*

*Woolls is justified despite the absence of full compliance with the cautionary statements set forth in Business & Professions Code § 7191.*" (Italics added.)[3]

After concluding section 7191 did not preclude enforcement of the agreement to arbitrate, the trial court continued the matter for a further hearing on Woolls's claim of fraud in the inducement of the arbitration provision.

On September 20, 2004, Woolls filed the instant petition for writ of mandate. Three days later, we issued an order to show cause[4] and stayed further proceedings below pending determination of the petition or further order of this court.

## CONTENTIONS

Woolls contends an arbitration provision which fails to comply with section 7191 is not enforceable against anyone other than the contractor/licensee; interpretation of similar disclosure requirements supports the conclusion that noncompliant arbitration provisions should not be enforced against anyone other than the licensee; and public policy also supports such a conclusion.

## DISCUSSION

1. *The Legislature has expressed a strong public policy in favor of arbitration; at the same time, arbitration cannot be imposed where an arbitration agreement has not been perfected in accordance with statutory requirements.*

█ Code of Civil Procedure section 1280 et seq., as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) "Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' (. . . see also *Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 226 [96 L.Ed.2d 185, 193, 107 S.Ct. 2332] [Federal Arbitration Act, 9 U.S.C. § 1 et seq., establishes federal policy in favor of

---

[3] In view of Woolls's filing of a motion to stay the arbitration, as well as his written objections to the arbitrator before the hearing, wherein Woolls contended the arbitration agreement was unenforceable because it failed to comply with section 7191, the trial court erred in ruling that Woolls's participation in the arbitration after the arbitrator overruled his objections amounted to a waiver.

[4] Arbitration proceedings are entitled to calendar preference in all courts. (Code Civ. Proc., § 1291.2.)

arbitration].) Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' [Citations.]" (*Moncharsh, supra,* at p. 9.)

Although arbitration is favored (*Moncharsh, supra,* 3 Cal.4th at p. 9), there is also "the recognition that 'the right to select a judicial forum, vis-à-vis arbitration, is a " 'substantial right,' " not lightly to be deemed waived. [Citations.]' " (*Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 643 [223 Cal.Rptr. 838].)

Toward that end, the Legislature has imposed mandatory disclosure requirements for arbitration provisions in various types of contracts. (See, e.g., § 7191 [contract for work on residential property of one to four units]; Code Civ. Proc., § 1295 [contract for medical services containing a provision for arbitration of professional negligence claim]; Health & Saf. Code, § 1363.1 [arbitration provision in health care service plan].)

■ Here, the Legislature sought to ensure that an agreement to arbitrate disputes arising out of a contract for work on residential property of up to four units is obtained through a proper waiver of the right to a judicial forum. (§ 7191.) In furtherance of that goal, it adopted section 7191 to "[p]rohibit the use of a binding arbitration clause in a contract for work on a residential property unless the contract contains a specified disclosure that the binding arbitration clause results in a waiver of the right to *a judicial resolution of a dispute* concerning the contract." (Sen. Floor Analysis, Assem. Bill No. 3302 (1993–1994 Reg. Sess.) Aug. 22, 1994, p. 2, italics added.)

### 2. *The pertinent statute.*

Section 7191, adopted in 1994, imposes certain disclosure requirements in specified residential contracts. The statute provides in relevant part:

"(a) If a contract for work on residential property with four or fewer units contains a provision for arbitration of a dispute between the principals in the transaction, the provision *shall* be clearly titled 'ARBITRATION OF DISPUTES.'

"If a provision for arbitration is included in a printed contract, it *shall* be set out in at least 10-point roman boldface type or in contrasting red print in at least 8-point roman boldface type, and if the provision is included in a typed contract, it *shall* be set out in capital letters.

"(b) Immediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provision described in subdivision (a), and immediately following that arbitration provision, the following *shall* appear:

" 'NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. [¶] BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONS CODE OR OTHER APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.' 'WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.'

"If the above provision is included in a printed contract, it *shall* be set out either in at least 10-point roman boldface type or in contrasting red print in at least 8-point roman boldface type, and if the provision is included in a typed contract, it *shall* be set out in capital letters." (§ 7191, subds. (a), (b), italics added.)

Subdivision (c) of section 7191 specifies the consequence for noncompliance with the statute. It states: "A provision for arbitration of a dispute between a principal in a contract for work on a residential property with four or fewer units that does not comply with this section *may not be enforceable against any person other than the licensee.*" (§ 7191, subd. (c), italics added.)

3. *The two arbitration provisions herein failed to comply with section 7191.*

Turner contends the arbitration provisions herein were in substantial compliance with section 7191, and that is sufficient to pass muster. The argument fails. Scrutiny of the arbitration provisions in the Agreement and in the Specifications in light of the requirements of section 7191 compels the conclusion they totally failed to comply with section 7191, under *any* standard.

Contrary to the statute, the arbitration provisions were not titled "ARBITRATION OF DISPUTES." (§ 7191, subd. (a).) The arbitration provision in

the Agreement bore no title at all. As for the arbitration provision in the Specifications, it was simply titled "DISPUTES," with no reference to arbitration.

More importantly, the two arbitration provisions lacked the disclosure paragraph set forth in section 7191, subdivision (b), which alerts the consumer, inter alia, " 'BY INITIALING IN THE SPACE BELOW . . . YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.' " In fact, the arbitration provisions lacked any mention of the waiver of the right to a court or jury trial. In this regard, the Agreement simply stated that all disputes "shall be decided by mediation and then arbitration." Similarly, the Specifications provided that "disputes between the Contractor and the Owner arising from this Agreement that are not settled through negotiation shall be offered for mediation" and that "[d]isagreements not settled by mediation shall be offered for arbitration." In short, the arbitration provisions herein were silent with respect to the waiver of the right to a court or jury trial.

Additionally, section 7191 requires an arbitration clause to be initialed by the parties in spaces below. (§ 7191, subd. (b).) Here, no spaces were provided for the parties' initials. As a result, the arbitration provision in the Agreement was not separately initialed—the Agreement was simply signed by the parties at the end of the document. Likewise, the arbitration provision contained in the Specifications was not separately initialed. The Specifications themselves were unsigned and solely were initialed by Woolls and Turner on the cover sheet.

We conclude there was a total failure of the arbitration provisions to comply with section 7191.

### 4. *Noncompliance with section 7191 renders the arbitration provisions unenforceable against Woolls.*

Subdivision (c) of section 7191 specifies the consequence for noncompliance with the statute. It states: "A provision for arbitration of a dispute between a principal in a contract for work on a residential property with four or fewer units that does not comply with this section *may not be enforceable against any person other than the licensee.*" (§ 7191, subd. (c), italics added.)

Because the statute provides a noncompliant arbitration *"may not be enforceable"* (§ 7191, subd. (c), italics added), rather than "shall not be enforceable," the trial court herein concluded it was vested with *discretion* to enforce the noncompliant arbitration provisions. Thus, the issue is presented as to whether the trial court properly found it had discretion to disregard the

arbitration provisions' noncompliance with section 7191, or whether a noncompliant arbitration clause is *per se* unenforceable.

### a. *Principles of statutory construction.*

■ "The touchstone of statutory interpretation is the probable intent of the Legislature. When interpreting a statute, we must ascertain legislative intent so as to effectuate the purpose of a particular law. Of course our first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632–633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) But language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance. (*Stanton v. Panish* (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372].)" (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741]; accord, *Union Bank of California v. Superior Court* (2004) 115 Cal.App.4th 484, 488 [9 Cal.Rptr.3d 137].)

### b. *The term "may not" is prohibitory, not permissive; thus, section 7191 prohibits enforcement of a noncompliant arbitration provision.*

As indicated, section 7191, subdivision (c) states a noncompliant arbitration provision "*may not be enforceable* against any person other than the licensee." (§ 7191, subd. (c), italics added.)

■ Generally speaking, "the word 'may' is permissive—you can do it if you want, but you aren't being forced to—while the word 'shall' is mandatory—no way you can do it. (See, e.g., *Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 433 [134 Cal.Rptr.2d 124] ['Ordinarily, the word "may" connotes a discretionary or permissive act; the word "shall" connotes a mandatory or directory duty.']; *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1389 [129 Cal.Rptr.2d 892] [generally explaining that 'may' is discretionary, 'shall' is mandatory]; see also *Dean v. Kuchel* (1951) 37 Cal.2d 97, 101–102 [230 P.2d 811] ['The word "may" is at least reasonably susceptible of a permissive meaning rather than mandatory or prohibitory . . . .'].)" (*County of Orange v. Bezaire* (2004) 117 Cal.App.4th 121, 129 [11 Cal.Rptr.3d 478].)

■ Here, however, the pertinent language is "may not," rather than "may"—section 7191, subdivision (c), states a noncompliant arbitration

provision *"may not"* be enforced against anyone other than the licensee. "May not" is prohibitory, as opposed to permissive. For example, *People v. Torres* (1995) 33 Cal.App.4th 37 [39 Cal.Rptr.2d 103], which states a witness "[m]ay [n]ot [e]xpress an [o]pinion as to [w]hether a [c]rime [h]as [b]een [c]ommitted" (*id.* at p. 47, some italics omitted), then goes on to explain that a witness is *"prohibit[ed]* . . . from expressing an opinion as to whether a crime has been committed." (*Ibid.,* italics added.)

■ Because "may not" is prohibitory, the plain and commonsense meaning of section 7191, subdivision (c) is that it prohibits enforcement of a noncompliant arbitration provision against anyone other than the licensee, leaving no room for any exercise of discretion by the trial court.

> c. *Assuming arguendo the statute is ambiguous, the legislative history confirms enforcement of a noncompliant arbitration provision is prohibited.*

Assuming arguendo section 7191, subdivision (c) is ambiguous with respect to whether compliance with the statute is mandatory or merely precatory, we resort to the legislative history for clarification. The legislative history confirms a noncompliant arbitration provision shall not be enforceable against any person other than the licensee.

Section 7191 was added to the Business and Professions Code by Assembly Bill No. 3302 (1993–1994 Reg. Sess.), which was approved by the Governor on September 29, 1994. The final amendments to Assembly Bill No. 3302 occurred in the Senate on August 22, 1994. With the final Senate amendments, the wording of the proposed statute, at subdivision (c), was: "A provision for arbitration of a dispute between a principal in a contract for work on a residential property with four or fewer units that does not comply with this section *may not be enforceable* against any person other than the licensee." (Sen. Amend. to Assem. Bill No. 3302 (1993–1994 Reg. Sess.) Aug. 22, 1994, § 5, italics added.) The final vote took place in the Assembly on August 25, 1994, when the Assembly concurred in the Senate amendments.

The bill analysis for the final Assembly vote states that the Senate amendments, inter alia, "[p]rovide that a provision for arbitration of a dispute between a principal in a contract for work on residential property with four or fewer units *shall not be enforceable* against any person other than the licensee unless the contract also contains the required disclosure." (Assem. Floor Analysis, Concurrence in Sen. Amends., Assem. Bill No. 3302 (1993–1994 Reg. Sess.) as amended Aug. 22, 1994, italics added.)

Thus, at the time of the final vote on Assembly Bill No. 3302, the Legislature understood and intended that an arbitration provision which fails to satisfy section 7191 "shall not be enforceable."

Guided by the legislative history, we conclude an arbitration provision which fails to comply with section 7191 cannot be enforced against any person other than the licensee. (§ 7191, subd. (c).)[5]

### d. *Analogous case law is in accord.*

Our conclusion that compliance with section 7191 is mandatory is consistent with *Malek v. Blue Cross of Cal.* (2004) 121 Cal.App.4th 44 [16 Cal.Rptr.3d 687] (*Malek*), wherein this court construed the arbitration disclosure requirements of Health and Safety Code section 1363.1. That statute, pertaining to health care service plans, specifies an arbitration agreement "shall include" certain specified disclosures. (Health & Saf. Code, § 1363.1.)

We noted that Health and Safety Code section 1363.1 is silent on the effect of noncompliance with its requirements. (*Malek, supra,* 121 Cal.App.4th at p. 64.) However, "to construe the statute as *optional* would render it ineffective, a construction that we must avoid. Moreover, it would be inconsistent with the legislative intent that these disclosures be included in '[a]ny health care service plan that includes terms that require binding arbitration . . . .' This language evidences an implicit legislative determination that these disclosures *must be* included in a health care service plan to safeguard against patients unknowingly waiving their constitutional right to a jury trial. Section 1363.1, therefore, establishes the requirements that *must be satisfied* in order to arbitrate disputes involving a health care service plan. Accordingly, even though section 1363.1 is silent on the effect of noncompliance, because the disclosure requirements are mandatory, the failure to comply with those requirements renders an arbitration provision unenforceable." (*Malek, supra,* 121 Cal.App.4th at p. 64, first italics added.)

Here, the disclosure requirements contained in section 7191, subdivisions (a) and (b), are mandatory. Section 7191 repeatedly provides those provisions "shall" appear in the contract. (§ 7191, subds. (a), (b).) Therefore, to construe section 7191 as optional would render it ineffective, a construction we must avoid. (See *Malek, supra,* 121 Cal.App.4th at p. 64.)

Consequently, we construe the language in section 7191 that a noncompliant arbitration provision "may not be enforceable" (§ 7191, subd. (c)), to

---

[5] If our interpretation of section 7191 is not what the Legislature intended, the statute could use clarification. (See *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 304, fn. 6 [81 Cal.Rptr.2d 456].)

mean that a failure to comply with section 7191 renders an arbitration provision *per se* unenforceable "against any person other than the licensee." (§ 7191, subd. (c).)

5. *Enforcement of section 7191 herein is not barred by federal law.*

Turner contends section 7191 is preempted by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (hereafter FAA) and therefore the arbitration clauses' noncompliance with section 7191 is not a ground to invalidate the arbitration agreement. As explained below, Turner's preemption argument is meritless.

a. *Turner's burden of establishing preemption.*

We begin with the premise that "[a]lthough federal law may preempt state law, '[c]ourts are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it.' [Citation.]" (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 815 [135 Cal.Rptr.2d 1, 69 P.3d 927]; accord, *Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1052 [10 Cal.Rptr.2d 72, 832 P.2d 573].) Therefore, Turner has the laboring oar with respect to the claim of preemption. Turner has not met his burden.

b. *Preemption by the FAA where transactions involve interstate commerce.*

By way of background, the FAA applies to any "contract evidencing a transaction involving commerce" which contains an arbitration clause. (9 U.S.C. § 2.) Section 2 of the FAA provides that arbitration provisions shall be enforced, "save upon such grounds as exist at law or in equity for the revocation of any contract." (*Ibid.*) Thus, "a state court may, without violating section 2, refuse to enforce an arbitration clause on the basis of 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 909, 116 S.Ct. 1652, 1656] (*Casarotto*).) Critically, however, a state court may not defeat an arbitration clause by applying state laws 'applicable *only* to arbitration provisions.' (*Ibid.*)" (*Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139, 151 [113 Cal.Rptr.2d 140].)

Thus, in *Casarotto,* the Supreme Court found the FAA preempted a Montana statute which required " '[n]otice that [the] contract is subject to arbitration' " to be typed in underlined capital letters on the first page of the contract for the arbitration clause to be enforceable. (*Casarotto, supra*, 517 U.S. at p. 683.) Because the Montana statute conditioned enforceability of the

arbitration agreement "on compliance with a special notice requirement not applicable to contracts generally," it was preempted. (*Id.* at p. 687.)

■ For the FAA to apply, a contract must involve interstate commerce. (9 U.S.C. § 2.) Turner does not cite any authority for the proposition that an agreement between a California homeowner and a California contractor to renovate a single family residence in La Canada, California, involves interstate commerce so as to implicate the FAA. To the contrary, given this record, case law points to the opposite conclusion.

In *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265 [130 L.Ed.2d 753, 115 S.Ct. 834], two homeowners sued a termite control company in Alabama state court. The company invoked the contract's arbitration clause and sought a stay to allow arbitration to proceed. The lower court denied the stay. That ruling was upheld by the Alabama Supreme Court pursuant to a state statute making written, predispute arbitration agreements invalid and unenforceable. (*Id.* at pp. 268–269.)

The United States Supreme Court reversed. (*Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at p. 268.) After examining the FAA's language, background and structure, the high court concluded the term "involving" commerce is broad and is indeed the functional equivalent of " 'affecting' " commerce. (513 U.S. at pp. 273–274.) The court recognized the FAA's reach coincides with that of the Commerce Clause (U.S. Const., art. I, § 8, cl. 3), and the FAA applies not only to the actual physical interstate shipment of goods but also contracts relating to interstate commerce. (513 U.S. at p. 274.)

After ruling the FAA broadly applies to contracts involving interstate commerce (*Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at p. 277), the high court readily concluded the "transaction in this case, in fact, involved interstate commerce. In addition to the multistate nature of Terminix and Allied-Bruce, the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama." (*Id.* at p. 282.)

In *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205 [120 Cal.Rptr.2d 328], this court addressed whether Code of Civil Procedure section 1298.7, which permits a purchaser to sue for construction defects despite having signed an agreement containing an arbitration clause, is preempted by the FAA.

The *Basura* litigation arose out of a large scale residential development project in Palmdale. After reviewing the declarations in the record, we found, "the indicia of interstate commerce are far greater than in *Allied-Bruce Terminix*. . . . [T]he construction of the subject development project in Palmdale involved the receipt and use of building materials and equipment such as GE Appliances, Merrilet Cabinets, Majestic Fireplaces, Alanco Windows, Carrier Heat & Air equipment, Progress Lighting, Delta plumbing, World Carpet, and Armstrong flooring, which were manufactured and/or produced in states outside California, including Nevada, Arizona, Connecticut, Indiana, South Carolina, Pennsylvania, Michigan, Tennessee and Georgia, and which were shipped to the jobsite in Palmdale. Further, in connection with the instant development: [U.S. Home] contracted with out-of-state design professionals, trade contractors, subcontractors and others; [U.S. Home] communicated by interstate mail and telephone with out-of-state manufacturers, design professionals, trade contractors, subcontractors and their employees; and [U.S. Home] engaged in marketing and advertising activities throughout the country using interstate media. [¶] These uncontroverted facts in the record compel the conclusion that the . . . agreements between [U.S. Home] and plaintiffs involved interstate commerce." (*Basura, supra,* 98 Cal.App.4th at p. 1214.)

### c. *Turner failed to meet his burden to establish preemption.*

The instant case, involving the renovation of a single family residence, lies at the opposite end of the spectrum from *Basura,* which involved the construction of a large scale housing development and presented numerous indicia of interstate commerce.

Moreover, unlike the record presented in *Basura*, Turner did not make any evidentiary showing in furtherance of his assertion this transaction involves interstate commerce. Although Turner argued the issue of federal preemption in his papers below, Turner did not submit any declarations to show the instant transaction involves interstate commerce.

Because Turner has not presented a factual record to establish preemption, his reliance on *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578 [11 Cal.Rptr.3d 787] is misplaced. *Hedges* found an agreement to purchase a single family residence "was a contract which evidenced a transaction 'involving commerce' within the meaning of [the FAA]." (*Id.* at p. 586.) There, the evidence showed, "[t]he anticipated financing involved the use of a $213,400 Federal Housing Administration home loan which is subject to the

jurisdiction of the United States Department of Housing and Urban Development headquartered in Washington, D.C. Further, the various copyrighted forms used by the parties and their brokers could only be utilized by members of the National Association of Realtors." (*Ibid.*)

Unlike the showing made in cases such as *Basura* and *Hedges*, Turner has not presented any *facts* to show the instant transaction involved interstate commerce. This case is akin to *Steele v. Collagen Corp.* (1997) 54 Cal.App.4th 1474, 1490 [63 Cal.Rptr.2d 879], wherein the party asserting preemption "made no attempt to establish its actions" fell within the ambit of federal law. We conclude Turner failed to meet his burden of establishing the FAA precludes enforcement of section 7191 herein. (*Olszewski v. Scripps Health, supra,* 30 Cal.4th at p. 815.)

> 6. *Because an arbitration clause which fails to comply with section 7191 is unenforceable against the consumer, Woolls's status as an attorney is irrelevant.*

Turner contends, and the trial court found, that because Woolls is a licensed attorney he was fully aware that by signing the arbitration provision, he was waiving his right to a jury trial and his right to appeal. Turner asserts those factors militate against enforcing section 7191 in this fact situation.

As explained, section 7191 prescribes the consequence for noncompliance therewith. A noncompliant arbitration provision is not "enforceable *against any person other than the licensee.*" (§ 7191, subd. (c), italics added.) We decline to rewrite the statute to provide that a noncompliant arbitration provision is also enforceable against a consumer who, due to education, training or experience, is aware that by agreeing to arbitration he or she is waiving the right to a court or jury trial. This court's role is simply to interpret the statute as it was enacted, not to add to, detract from, or fine-tune it.

Further, the trial court's approach herein would only result in additional litigation, with the parties in future cases contesting whether the consumer was aware that he or she was giving up the basic right to a court or jury trial, notwithstanding a contract's failure to comply with section 7191. Such an outcome also would be at odds with section 7191, which imposes mandatory notice provisions as a condition to the enforceability of an agreement to arbitrate.

## CONCLUSION

The two arbitration provisions herein fail to comply with section 7191. Accordingly, the purported agreements to arbitrate are unenforceable against Woolls.[6]

## DISPOSITION

The order to show cause is discharged. Let a peremptory writ of mandate issue, directing respondent superior court to vacate its order entered on August 9, 2004, and to enter a new order granting Woolls's petition to vacate the arbitrator's award. Woolls is awarded his costs in this proceeding. (Cal. Rules of Court, rule 56(*l*).)

Kitching, J., and Aldrich, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied June 8, 2005.

---

[6] Because the arbitration provisions are unenforceable due to noncompliance with section 7191, it is unnecessary to address Turner's contention that Woolls was not fraudulently induced to sign the arbitration agreements.