Filed 8/18/25  vdB&A Holdings v. Connor Group Global Services CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VDB&A HOLDINGS, INC. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CONNOR GROUP GLOBAL SERVICES, LLC et al., <br><br> Defendants and Respondents. | D084757 <br><br><br> (Super. Ct. No. 37-2024-00003383-CU-PA-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Loren G. Freestone, Judge.  Reversed with directions.

Complex Appellate Litigation Group, Benjamin S. Feuer, Michael J. von Loewenfeldt, and Johanna S. Schiavoni for Plaintiffs and Appellants.

Simons Hall Johnston, Mark G. Simons, Duncan G. Burke; Buchalter and Robert M. Dato for Defendants and Respondents.

Esther van den Boom and her company, vdB&A Holdings, Inc., appeal the order vacating the arbitration award they obtained against Jeffrey Pickett and his companies, Connor Group Global Services, LLC, and Connor

Group Holdings I, Inc.[1]  The arbitrator rescinded contracts between Esther and Jeff and ordered her to pay him restitution.  The superior court ruled the parties' arbitration agreement did not allow the arbitrator to award such equitable remedies and vacated the award.  We reverse.

I.

BACKGROUND

A.    *Parties' Business Relationship*

Esther and Jeff both operate accounting businesses.  Esther started van den Boom & Associates, LLC (the Company), in 2014, and focused on clients in the life sciences industry.  Jeff founded Connor Group Global Services, LLC, in 2006, and served a broad range of clients, including those in the life sciences industry.  When Esther and Jeff met in 2020, they decided to form a strategic partnership to dominate the life sciences industry as to the provision of accounting services.  They formalized their business relationship by executing two agreements, the Amended and Restated Operating Agreement of the Company (the Operating Agreement), and the Membership Interest Purchase Agreement (the Purchase Agreement), effective March 1, 2021.

The Operating Agreement outlined the structure, management, and operations of the Company.  A non-competition clause prohibited each manager or member from competing with the Company directly or through an affiliated entity.  An option clause gave Jeff the right, but not the obligation, to purchase the entire Company during the two-year period that

---

[1]    The parties and the arbitrator consistently refer to the individual parties and their respective companies collectively by the individuals' first names.  For consistency and simplicity, we shall do likewise except where distinction between an individual and a company is required.

2

would commence on the sixth anniversary of the effective date of the Operating Agreement. An arbitration clause stated in part:

> "Except for ancillary measures in aid of arbitration and for proceedings to obtain provisional or equitable remedies and interim relief, including injunctive relief, any controversy, dispute, or claim arising out of or in connection with or relating to this Agreement, or the breach, termination or validity thereof or any transaction contemplated hereby (any such controversy, dispute or claim being referred to as a 'Dispute') shall be finally settled by arbitration conducted expeditiously in accordance with the Commercial Arbitration Rules then in force (the 'AAA Rules') of the American Arbitration Association or any successor entity (the 'AAA')." (Underlining omitted.)

Esther signed the Operating Agreement as a manager of the Company and as the president of member vdB&A Holdings, Inc. Jeff signed it as a manager of the Company and as the chief executive officer of member Connor Group Holdings I, Inc. Connor Group Holdings I, Inc., a shell company that would hold Jeff's interest in the Company, was substituted for Connor Group Global Services, LLC, as the member at the last minute without notification to Esther.

The Purchase Agreement concerned Esther's sale of a 50 percent interest in the Company to Jeff for $10 million. As a condition of closing, each party had to receive a copy of the Operating Agreement executed by the other party and in the form attached as an exhibit to the Purchase Agreement. The Purchase Agreement contained no arbitration clause, but contained a submission to jurisdiction clause, which stated in part:

> "Any legal suit, action or proceeding arising out of or based upon this agreement or the transactions contemplated hereby may be instituted in [a federal or state court located in San Diego], and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding." (Capitalization omitted.)

3

Esther signed the Purchase Agreement as president and shareholder of vdB&A Holdings, Inc. Jeff signed it as the chief executive officer of Connor Group Holdings I, Inc.

Based on the parties' different understandings of their business relationship, over the next two years disagreements arose about whether accounting services for clients in the life sciences industry would be provided by the Company or by Jeff's organization. Esther understood Jeff's organization would provide the services only if the Company first decided it could not or would not do so. Jeff understood his organization would continue to provide accounting services to clients in the life sciences industry and simultaneously would promote the Company for services of a type his organization typically did not provide.

B.    *Arbitration Proceedings*

In March 2023, Esther and vdB&A Holdings, Inc., filed with the AAA a demand for arbitration against Jeff and Connor Group Holdings I, Inc. The demand set out nine separate claims the gist of which was that Jeff misrepresented his plans for the parties' business relationship and violated the non-competition clause of the Operating Agreement by diverting potential clients from the Company to his own organization. Esther sought, among other relief, rescission of the Operating and Purchase Agreements and "restitutionary damages."

Jeff filed a combined answering statement and motion to terminate the arbitration. He denied all allegations of wrongdoing and argued the arbitration should be terminated because: (1) the Purchase Agreement contained no arbitration clause, and claims based on that Agreement had to proceed in court; (2) some of the claims belonged to the Company, not Esther or vdB&A Holdings, Inc., and could not be pursued with claims belonging to

4

either of them in the same proceeding; and (3) Esther suffered no legally cognizable injury and demanded arbitration as a pretext to avoid the option clause of the Operating Agreement.

Esther opposed the motion to terminate the arbitration. She argued all the claims were arbitrable because they arose out of the Operating Agreement, which contained an arbitration clause. Esther further argued the Operating and Purchase Agreements should be read together to require arbitration of disputes arising out of the parties' business relationship and to allow litigation of matters ancillary to arbitration in courts in San Diego. Esther argued she had standing to assert direct claims against Jeff because he deceived her into selling half of the Company at a significant discount.

In reply, Jeff insisted the Operating and Purchase Agreements were distinct integrated contracts that could not be read together, and the arbitration clause of the Operating Agreement did not cover disputes arising out of or related to the Purchase Agreement, which had to be litigated in a state or federal court in San Diego. Under the heading, "THE CLAIMS ASSERTED ARE ALL PREMISED ON THE [PURCHASE AGREEMENT] MANDATING TERMINATION," he contended:

> "In further disregard of the clear and unambiguous terms of the [Purchase Agreement] and [Esther's] own admissions, [Esther] wrongfully initiated this arbitration proceeding asking '[f]or the [Purchase Agreement] to be rescinded as void.' [Citation.] Clearly this requested relief is not something that is subject to arbitration and this arbitration must be terminated for lack of subject matter jurisdiction. 'An arbitrator exceeds his or her powers when granting a remedy expressly forbidden by the parties' arbitration agreement.' [Citation.]"

Jeff did not cite or quote the arbitration clause.

The arbitrator held a hearing and denied Jeff's motion to terminate the arbitration. The arbitrator essentially agreed with Esther that she could

5

assert the claims in her demand (except to the extent they were based on a separate nondisclosure agreement that is not at issue on appeal); that the Operating and Purchase Agreements should be construed together as parts of the same transaction; and that the Agreements could be harmonized so that the arbitration clause of the Operating Agreement covered claims involving either Agreement and the submission to jurisdiction clause of the Purchase Agreement "left open the right of the parties to utilize the court system for certain limited purposes."

Jeff filed 10 counterclaims the gist of which was that Esther took improper distributions from the Company and there were mistakes in the language of the Operating and Purchase Agreements concerning the right of Jeff's organization to continue to accept clients in the life sciences industry. Among other remedies, Jeff sought reformation of the contracts, expulsion of Esther from the Company, and injunctive relief.

The parties engaged in extensive discovery and motion practice and had several pretrial hearings with the arbitrator, who issued multiple orders. The arbitrator denied Jeff's request to file a dispositive motion, motion to compel production of Esther's personal tax returns, and motion in limine to exclude evidence of damages as speculative. The arbitrator, over Jeff's opposition, granted Esther's motion to add Connor Group Global Services, LLC, as a respondent and to amend her claims accordingly. The arbitrator denied Esther's request to distribute the Company's profits while the arbitration was pending. Jeff objected to any distribution to Esther as "an equitable remedy . . . unquestionably outside the scope of the arbitration clause in the Operating Agreement."

The arbitrator held an evidentiary hearing over the course of six days at which Esther, Jeff, and other witnesses testified and documents were

introduced. At the end of the hearing, Esther formally elected as her remedy rescission of the Operating and Purchase Agreements rather than their enforcement. In his post-hearing brief, Jeff argued "both damages and equitable relief are appropriate in this case," and urged the arbitrator to award him damages for Esther's wrongful distributions of Company funds to herself, to reform the Operating Agreement to make the language of the non-competition clause conform to the parties' intentions, to expel Esther from the Company, and to accelerate his right to purchase the entire Company.

The arbitrator issued an interim award. He found Esther had been misled about the identity of the purchaser of one-half of the Company and the parties had conflicting understandings about how they would allocate business in the life sciences industry, and these circumstances led them to be mistaken about material facts underlying their contracts and caused the consideration for those contracts to fail. The arbitrator ordered rescission of the Operating and Purchase Agreements on grounds of mistake and failure of consideration. The arbitrator denied as speculative Esther's request for "restitutionary damages" for the profits she allegedly lost as a result of Jeff's competition with the Company. As a condition of rescission, the arbitrator ordered Esther to pay Jeff restitution with interest, including the $6.5 million she netted after payment of taxes from his purchase of a 50 percent interest in the Company for $10 million, any tax refund she received as a result of the rescission, and the $761,581 capital contribution Jeff made to the Company. The arbitrator denied Jeff any relief on his counterclaims, which the arbitrator ruled were moot based on the rescission and also lacked merit. The arbitrator determined Esther was the prevailing party entitled to costs and attorney fees.

After receipt of additional briefs from the parties regarding costs and attorney fees and requesting clarification, reconsideration, and modification of the interim award, the arbitrator issued a final award.  In rejecting certain objections by Jeff to the arbitrator's bases for rescission and restitution, the arbitrator stated the parties' closing briefs addressed "[n]egligent misrepresentations causing mistaken beliefs material to the decision to enter into the contracts, as a theory of recovery," and evidence of Esther's tax liability had been presented without objection at the hearing.  The arbitrator confirmed the rescission of the Operating and Purchase Agreements; increased the amount of restitution Esther had to pay Jeff to include the $1,199,588 in taxes he paid on his share of the Company's profits, plus interest; and awarded Esther $1,575,968 in costs and attorney fees.

Two days after issuance of the final award, Esther wired Jeff the money the arbitrator ordered her to pay him as a condition of rescission.  Jeff accepted the money, but claims he did so under a reservation of rights.

C.    *Court Proceedings*

About three weeks later, Esther petitioned the superior court to correct the arbitration award, by deleting the additional $1,199,588 the arbitrator ordered her to pay Jeff in restitution as having been ordered in excess of the arbitrator's powers, and to confirm the award as corrected.  (Cal. Code Civ. Proc., §§ 1285, 1286.6, subd. (b).)  Jeff opposed Esther's petition.

Jeff counterpetitioned the superior court to vacate or to correct the award on the grounds the arbitrator exceeded his powers and engaged in misconduct that substantially prejudiced Jeff's rights.  (Code Civ. Proc., §§ 1286.2, subd. (a)(3), (4), 1286.6, subd. (b).)  Jeff argued the arbitrator had no power to consider claims arising out of the Purchase Agreement, to consider claims for injury to the Company asserted by Esther rather than by

8

the Company, to grant the equitable remedy of rescission, to grant rescission on theories not pleaded, or to consider Esther's payment of taxes in awarding restitution. Jeff also argued the arbitrator conducted an unfair hearing by considering claims and issues for which Jeff received insufficient notice, by inventing claims for Esther, and by making various rulings against him. Jeff asked the court to vacate the award in its entirety or, alternatively, to correct the award by deleting the equitable remedy of rescission or by ordering full rather than partial rescission. Esther opposed Jeff's counterpetition, in part on the ground the arbitration clause did not forbid equitable relief, which Jeff himself pursued in the arbitration.

The superior court held a hearing on the petition and counterpetition. The court ruled the arbitrator exceeded his authority by ordering rescission because the arbitration clause of the Operating Agreement "carved out 'equitable remedies.'" The court rejected Esther's contention that by requesting equitable remedies Jeff waived his right to argue the arbitrator could not grant such remedies, and found Jeff "repeatedly" had objected to the arbitrator's authority to do so. The court ruled it could not correct the arbitrator's award "without affecting the merits of the decision upon the controversy submitted" (Code Civ. Proc., § 1286.6, subd. (b)) and granted Jeff's counterpetition to the extent it requested vacation of the award. The court denied Esther's petition as moot.

Esther appealed the order vacating the arbitration award. (See Code Civ. Proc., § 1294, subd. (c).)

## II.

## DISCUSSION

Esther attacks the superior court's order on several grounds. She argues Jeff's acceptance of the money she paid under the arbitration award

9

barred him from seeking to vacate the award. Esther contends Jeff forfeited any objection to the arbitrator's authority to award rescission by failing to make a timely objection during the arbitration and by seeking equitable remedies himself. She argues the superior court erroneously adopted Jeff's interpretation of the arbitration clause of the Operating Agreement as prohibiting the arbitrator from awarding any equitable relief. Esther also contends none of the alternative grounds Jeff urged in the superior court suffices to affirm the order vacating the award. She asks us to reverse the order and to remand the matter to the superior court with directions to confirm the award.

As we shall explain, Jeff forfeited his objection to the arbitrator's power to award equitable remedies, and none of the other grounds on which he sought to vacate the arbitration award has merit. We reverse for those reasons and need not, and do not, address Esther's other claims of error.

A.    *Forfeiture of Objection to Arbitrator's Power to Order Rescission*

The superior court vacated the arbitration award on the ground, urged by Jeff, that the arbitrator had no authority to rescind the parties' contracts because the arbitration clause excepted from its coverage "proceedings to obtain provisional *or equitable remedies* and interim relief." (Italics added.) "Rescission is an equitable remedy." (*Cameron v. Evans Security Corp.* (1931) 119 Cal.App. 164, 172.) Esther contends Jeff forfeited that ground and the court erred in ruling otherwise. We agree.

Jeff did not timely object to the arbitrator's power to grant Esther's request for rescission of the Operating and Purchase Agreements. To avoid wasting scarce dispute resolution resources and to prevent a party from concealing an objection to be asserted only if the arbitration does not go its way, a party aware of an objection to the arbitrator's jurisdiction must raise

10

it at the outset. (*Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328–329 (*Cummings*).) Under the rules that governed the parties' arbitration, "[a] party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim *no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection.*" (AAA Rule R-7(c), italics added.) In her claims, Esther repeatedly requested rescission of the parties' contracts. In his combined answering statement and motion to terminate the arbitration, Jeff objected to the arbitrator's power to decide claims arising out of the Purchase Agreement or belonging to the Company, but not to the arbitrator's power to grant rescission specifically or equitable remedies generally. Although in the reply in support of the motion Jeff asserted that " '[a]n arbitrator exceeds his or her powers when granting a remedy expressly forbidden by the parties' arbitration agreement,' " he did so as part of the argument that claims based on the Purchase Agreement were not arbitrable. Jeff did not cite the remedial exceptions to the arbitrator's authority in the arbitration clause until nearly four months after he filed his answering statement, when he opposed Esther's request for an order compelling distribution of Company profits pending the arbitration on the ground the request was "for an equitable remedy and unquestionably outside the scope of the arbitration clause." Such a belated objection is forfeited. (*Sodexo Management, Inc. v. Detroit Public Schools* (E.D.Mich. 2016) 200 F.Supp.3d 679, 689 [applying AAA Rule R-7(c)].)

Jeff also lost the right to object to the arbitrator's authority to grant equitable remedies "because he substantially invoked the machinery of the arbitral forum in asking the arbitrator for relief." (*Douglass v. Serenevision, Inc.* (2018) 20 Cal.App.5th 376, 390 (*Douglass*).) Six days after the arbitrator

11

denied Jeff's motion to terminate the arbitration, Jeff filed counterclaims in which he requested remedies including reformation of the Operating Agreement. Reformation is an equitable remedy. (*Munoz v. Patel* (2022) 81 Cal.App.5th 761, 778; *Jones v. First American Title Ins Co.* (2003) 107 Cal.App.4th 381, 389.) Jeff also asked the arbitrator to expel Esther from the Company and to accelerate his option to buy the other 50 percent of the Company, remedies he labeled "equitable." He never withdrew his requests for equitable remedies or objected to the arbitrator's authority to grant them. To the contrary, he demanded those remedies in his post-hearing brief. A party may not voluntarily submit a case to an arbitrator, await the outcome, and if the outcome is unfavorable challenge the arbitrator's authority to decide the case. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30 (*Moncharsh*); *University of San Francisco Faculty Assn. v. University of San Francisco* (1983) 142 Cal.App.3d 942, 954.) Jeff's participation in the arbitration without objecting to the arbitrator's power to award final equitable relief bars him from seeking to vacate the award on that ground. (*Cabrera v. Plager* (1987) 195 Cal.App.3d 606, 613, fn. 8.)

Jeff argues he did not lose his right to challenge the arbitrator's jurisdiction to award equitable remedies by participating in the arbitration and seeking such remedies himself. He claims he unsuccessfully challenged the arbitrator's jurisdiction before he filed his counterclaims (see, e.g., *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 204, fn. 3 [no forfeiture by participation in arbitration after arbitrator overruled jurisdictional objection]), and, in any event, a jurisdictional challenge cannot be forfeited and may be made at any time. We are not persuaded.

Participation in an arbitration without a jurisdictional objection may not forfeit the objection when the arbitrator's jurisdiction is *fixed by statute*

12

(*National Union Fire Ins. Co. v. Stites Prof. Law Corp* (1991) 235 Cal.App.3d 1718, 1723–1726), but such participation does result in forfeiture when the arbitrator's jurisdiction is *fixed by contract* (*Douglass, supra*, 20 Cal.App.5th at pp. 385–386; *Porter v. Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1291). Since this case concerns contractual arbitration, not statutory arbitration, an untimely jurisdictional objection may be forfeited. As we explained above, the only jurisdictional objection Jeff made before he filed counterclaims was to the arbitrator's power to decide claims arising out of the Purchase Agreement or belonging to the Company. He did not object to the arbitrator's power to grant equitable remedies until he opposed Esther's request for an order compelling distribution of Company profits, and that was an objection to *interim* equitable relief, not *final* equitable relief. When Jeff made the objection, he had already filed counterclaims demanding reformation and other types of final equitable relief, which he pursued to the conclusion of the arbitration. "[A] party may not fully argue the merits of an issue and present its desired outcome thereon, then claim on review that this was merely its way of telling the arbitrator he could not consider the issue." (*Porter*, at p. 1291, fn. 7.)

In summary, we conclude a "party cannot wait until after an award is made to claim that an issue expressly presented to the arbitrator for decision is beyond his authority." (*J.C. Gury Co. v. Nippon Carbide Indus. (USA) Inc.* (2007) 152 Cal.App.4th 1300, 1302.) A party like Jeff "who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture." (*Cummings, supra*, 128 Cal.App.4th at p. 329.)

13

B.    *Alternative Grounds to Vacate Arbitration Award*

Our conclusion Jeff forfeited his objection to the arbitrator's power to award rescission does not necessarily require us to reverse the superior court's order vacating the award.  A respondent generally may urge affirmance of an appealed order on any ground that was litigated in the superior court and would support the order.  (Code Civ. Proc., § 906; *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 925, fn. 6; *California State Electronics Assn. v. Zeos Internat. Ltd.* (1996) 41 Cal.App.4th 1270, 1275.)  Jeff offers several alternative grounds for affirmance.  None is persuasive.

Jeff contends the arbitrator had no power to resolve disputes related to the Purchase Agreement because the arbitration clause was in the Operating Agreement, the Purchase Agreement contained an integration clause and a clause requiring litigation in San Diego courts, and the two contracts involved substantially different subject matters.  We disagree.  Under the rules referenced in the arbitration clause, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, *including any objections with respect to the* existence, *scope*, or validity *of the arbitration agreement or to the arbitrability of any claim or counterclaim*."  (AAA Rule R-7(a), italics added.)  By incorporating that rule into their contract, the parties clearly manifested their intent to have the arbitrator decide whether a particular dispute fell within the scope of the arbitration clause.  (*B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 957–958; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892–893; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 557.)  The arbitrator ruled the Operating and Purchase Agreements were so intertwined that disputes involving either one

14

were covered by the clause of the Operating Agreement requiring arbitration of disputes "arising out of or in connection with or relating to this Agreement . . . or any transaction contemplated thereby." Since the parties delegated decisions on arbitrability to the arbitrator, the courts cannot review his decision for factual or legal error. (*Moncharsh, supra*, 3 Cal.4th at p. 11; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1443.)

As his next alternative ground for affirmance, Jeff argues various actions by the arbitrator exceeded his powers. He complains the arbitrator decided derivative claims Esther lacked standing to assert and claims for which she established no legally cognizable injury, granted rescission based on unpled theories, and wrongfully considered information on Esther's tax liability in setting the amount of the restitution payment. In taking the actions of which Jeff complains, the arbitrator was resolving contested factual and legal issues presented to him during the course of the arbitration. It was up to the arbitrator "to determine which issues were actually 'necessary' to the ultimate decision" (*Morris v. Zuckerman* (1968) 69 Cal.2d 686, 690), and his "resolution of these issues is what the parties bargained for in the arbitration agreement" (*Moncharsh, supra*, 3 Cal.4th at p. 28). Even if, as Jeff insists, the arbitrator resolved the issues incorrectly, "[i]t is of course well settled that arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision." (*O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 111; accord, *Moncharsh*, at p. 28.) The merits of the parties' dispute are not subject to judicial review on a petition to vacate an arbitration award. (*O'Malley*, at p. 111; *Plantations at Haywood 1, LLC v. Plantations at Haywood, LLC* (2025) 108 Cal.App.5th 803, 811.) Hence, we cannot affirm the superior court's order on this alternative ground.

As his last alternative ground for affirmance, Jeff argues the arbitrator committed misconduct that denied him a fair hearing and decision. He accuses the arbitrator of "abusive conduct" for refusing to let him file a summary judgment motion or to rule before the hearing on his in limine motion to defeat or narrow Esther's damages claims, while allowing Esther to amend claims over his objection and to supplement discovery responses on damages just days before the arbitration hearing. Jeff complains the arbitrator's deduction of the taxes Esther paid on the sale of half the Company from the amount of restitution she had to pay as a condition of rescission resulted in a "forfeiture" to the Internal Revenue Service and a "punitive award" against him. None of this amounts to "misconduct" by the arbitrator that "substantially prejudiced" Jeff's rights as would justify vacation of the award. (Code Civ. Proc., § 1286.2, subd. (a)(3).)

Jeff's complaints about the arbitrator's handling of pleadings, discovery, and motions establish no prejudicial misconduct. "[A]n arbitration has a life of its own outside the judicial system" (*Byerly v. Sale* (1988) 204 Cal.App.3d 1312, 1316) in which "[t]he arbitrator, and not the court, decides questions of procedure and discovery" (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 488, fn. omitted). An arbitrator need not follow the rules of procedure and evidence that govern judicial proceedings. (Code Civ. Proc., § 1282.2, subd. (d); *Sapp v. Barenfeld* (1949) 34 Cal.2d 515, 520.) The AAA Rules to which the parties agreed authorized the arbitrator to allow amendment of a claim (Rule R-6(b)), to manage discovery (Rule R-22(a)), and to allow a party to file a dispositive motion only if it was likely to dispose of or to narrow the issues in the case (Rule R-33). In deciding questions committed to him by the AAA Rules, the arbitrator committed no misconduct. Moreover, the arbitrator's decisions on

16

those questions did not substantially prejudice Jeff. The arbitrator ultimately agreed with Jeff that Esther had no proof of damages and awarded her none. Alleged arbitrator misconduct that causes no prejudice affords no ground to vacate an arbitration award. (*Good v. Kaiser Foundation Hospital* (1984) 152 Cal.App.3d 819, 823.)

Jeff's complaints about the restitution the arbitrator awarded as a condition of rescission also establish no prejudicial misconduct. "The choice of remedy . . . may at times call on any decisionmaker's flexibility, creativity and sense of fairness. In private arbitrations, the parties have bargained for the relatively free exercise of those faculties." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 374.) Under the rules governing the parties' arbitration, the arbitrator "may grant any remedy or relief that the arbitrator deems just and equitable." (AAA Rule R-47(a).) As to the decision to deduct the taxes Esther paid on selling half the Company to Jeff from the restitution she had to pay him as a condition of rescission, the arbitrator stated: "[T]o do equity even where difficult to restore the parties completely, it is appropriate for [Jeff] to be the part[y] who bear[s] the risk of loss from the tax payments which predictably had to be made by Esther as a result of contract transactions, which would never have occurred but for the negligence of [Jeff]." By granting a remedy that "bears a rational relationship" to the parties' contracts and to the related wrongful conduct the arbitrator found Jeff committed, the arbitrator engaged in no prejudicial misconduct. (*Advanced Micro Devices, Inc.*, at p. 367; *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1139 (*Emerald Aero*).)

Finally, we reject Jeff's contention that "[t]he totality of the circumstances demonstrates the arbitrator's infidelity to fairness with respect to Jeff and provides this Court with an additional basis to vacate the

17

Final Award." An award may be vacated for arbitrator misconduct when the arbitrator deprived the complaining party of "a fundamentally fair hearing" (*Move, Inc. v. Citigroup Global Markets, Inc.* (9th Cir. 2016) 840 F.3d 1152, 1158) or "render[ed] the process unfair" (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368). A fair hearing requires adequate notice to the parties, a sufficient opportunity for them to present evidence and argument, and an impartial decision by the arbitrator. (*Sunshine Mining Co. v. United Steelworkers of America, AFL-CIO, CLC* (9th Cir. 1987) 823 F.2d 1289, 1295; *Emerald Aero, supra*, 9 Cal.App.5th at p. 1142.) Based on our review of the record, including the arbitrator's final award and interim orders, we are satisfied the parties had adequate notice of the claims and counterclaims at issue, they had a full and fair opportunity to present their respective cases, and the arbitrator carefully considered their evidence and arguments in making an impartial award. The record discloses no "serious problems with the award itself[ ] or with the fairness of the arbitration process" that would justify vacation of the award. (*Moncharsh, supra*, 3 Cal.4th at p. 12.)

C.     *Conclusion*

For the foregoing reasons, we conclude Jeff established no grounds to vacate the arbitrator's award and the superior court's order granting in part his counterpetition must be reversed. We further conclude that on remand the court must enter a judgment confirming the award. "If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." (Code Civ. Proc., § 1286.) When a petition is filed, the superior court has four options: (1) confirm the award, (2) correct the award and confirm it as corrected, (3) vacate the award, or (4) dismiss the proceeding.

18

(*Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1085; *Jones v. Kvistad* (1971) 19 Cal.App.3d 836, 840 & fn. 3.)  Because the superior court should have denied Jeff's counterpetition to vacate the arbitration award and on appeal no party has sought correction of the award or dismissal of the proceeding, the court must confirm the award as a judgment.  (Code Civ. Proc., § 1287.4; *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 109–110; *Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 8–9.)

III.

DISPOSITION

The order granting the counterpetition to vacate the arbitration award is reversed.  The matter is remanded to the superior court for entry of a judgment confirming the award.  Appellants are entitled to costs on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

CASTILLO, J.

19